Foster, J.
The question before us is whether reformation should be granted where the written executed contract contains an essential term which does not represent the term as originally agreed upon in the oral negotiations. The remaining essential terms were not fixed until the execution of the formal contract.
The development of the negotiations and agreement are set forth as follows. Plaintiff, a fence building company, through its sales estimator, Mr. Harkness, and defendant, who conducted a Summer camp, entered into negotiations on March 17, 1958 concerning new fencing around three tennis courts. Harkness offered to prepare estimates, and by telephone told defendant that he had made an estimate “ on 484 feet, of ten-foot high chain-link fence * * * in one width” at $2,040. Because of the amount of money, defendant asked if there was anything else that could be done, to which Harkness replied for less money ‘ ‘ we could figure that in hex netting, otherwise the specifications the same as in the chain-link ’ \ Although defendant testified Harkness personally came to the camp and viewed the area at this time, which Harkness denied, the realm of discussion was over the cost of fence material. Even with a possible idea of enclosing an additional handball court because of the savings in the use of hex netting, the 484-foot figure, defendant testified, ‘1 was a fair estimate of the whole area ’ ’. In any event, defendant requested both estimates.
Harkness prepared the two estimates, one for chain-link, the other for hex netting, gave them to a stenographer, who typed them on two separate contract forms. Harkness looked them over quickly, and mailed them to defendant. Except as to the differences about to be noted, they are identical.
The first proposal dated March 21,1958 specifies “ Length 484 linear feet ”, “ Height 10' ”, “ Fabric 2" mesh #9 gauge galv. p.hain link “ Price Two Thousand Forty Dollars ($2,040.00) ’ ’. This proposal was not accepted by defendant. The second pro *45 posed contract dated the same day specifies ‘ ‘ Length 968 linear feet ”, “ Height 10' ”, “ Fabric l1/^' mesh #16 ga. Hex Netting in two widths of 5' each ”. “ Price One Thousand Eight Hundred Twenty Nine Dollars ($1,829.00) ” (emphasis supplied). Each proposal provides 1 ‘ If more or less fence is erected, an adjustment in price will be made.” It should be noted that the second proposal did not state 968 linear feet of fence but simply 968 linear feet; to erect a 10-foot-high fence 484 feet long requires 968 linear feet of 5-foot-wide hex netting. During the first week in April, defendant signed and returned the second proposal, the hex netting offer, together with the requested $600 deposit.
When construction around the tennis courts was almost completed, defendant inquired about enclosing the handball court. Harkness quoted a price based on the tennis court price and, although a letter from plaintiff was sent on May 22, 1958 confirming the estimate and requesting a duplicate letter be signed and returned, the work went on without this additional approval.
At the completion of the fencing work, the job superintendent measured the area fenced. The perimeter of the tennis courts turned out to be 534 feet, and in addition there were 50 feet on each side of the handball court, a total of 634 feet. The total amount of hex netting used was thus 1,268 feet, since the fence was put up in 2 widths of 5 feet each. Plaintiff sent defendant a bill dated May 31, 1958, stating a balance due of $1,794.50. This sum was arrived at by adding $1,829 “ as per Contract dated 4/2/58” plus “ 150' additional fence furnished and installed @ $3.77 per ft. as per estimate dated 5/22/58 ”, a total of $2,394.50 less $600 deposit. On July 5, more than a month later, and without any protest meanwhile, defendant mailed plaintiff a check for only $597.92 together with a letter stating:
“ Enclosed find $597.92 which pays up for 634 feet installed, and which was based on the original contract price. I find you made an error in your calculations. 968 linear feet priced at $1829.00 makes 634 feet equal to $1197.92. Six Hundred dollars has been paid, leaving a balance of $597.92.
‘ ‘ I would like to enclose another area which I estimate about 300 feet. Kindly get in touch with me to make arrangements as we then can use up the remaining 334 feet of our contract. ’ ’
Thereafter, plaintiff instituted this action to reform the executed contract to read 484 linear feet.
*46 There is no contention in the record that the two original proposals, identical in the most part except for the type of fence material, were not intended for exactly the same ground area. As noted previously, the problem here is that the ground linear feet involved in the original estimate (disregarding the actual measurement) was 484 feet. This would mean 484 feet of 10-foot-high chain-link fence; but 968 feet of 5-foot hex-netting fence since a double width was necessary to malee the hex-netting fence 10 feet high. Plaintiff contends this contract, as signed, containing the reference to 968 linear feet, was merely a typographical or inadvertent error on the part of the plaintiff’s secretary in exactly doubling the ground linear feet, perhaps to reflect the length of 5-foot width fencing, not coming to his attention until the fence was nearly finished, and did not represent the agreement previous to its reduction to writing. Defendant asserts that he signed the contract as written, he tendered payment on the basis of that contract and is even willing to ‘ ‘ use up ” the remaining ground linear feet of fencing.
The sole issue before us is whether reformation should have been granted. In Ross v. Food Specialties (6 N Y 2d 336, 341) this court stated: “We have consistently and repeatedly held that before a reformation can be granted the plaintiff ‘ must establish his right to such relief by clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error ’ nor may the plaintiff ‘ secure reformation merely upon a showing that he or his attorney made a mistake. In the absence of fraud, the mistake shown 1‘ must be one made by both parties to the agreement so that the intentions of neither are expressed in it ” ’ (Amend v. Hurley, 293 N. Y. 587, 595; Salomon v. North British & Mercantile Ins. Co., 215 N. Y. 214; Strong v. Reeves, 280 App. Div. 301, affd. 306 N. Y. 666). * * * Reformation is not designed for the purpose of remaking the contract agreed upon but, rather, solely for the purpose of stating correctly a mutual mistake shared by both parties to the contract; in other words, it provides an equitable remedy for use when it clearly and convincingly appears that the contract, as written, does not embody the true agreement as mutually intended ” (emphasis in original). However, in Hart v. Blabey (287 N. Y. 257, 262), this court invoked the equitable doctrine. *47 of reformation on the following basis: “‘Where there is no mistake about the agreement and the only mistake alleged is in the reduction of the agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.’ (Born v. Schrenkeisen, 110 N. Y. 55, 59.) ‘ In such a case equity will conform the written instrument to the parol agreement which it was intended to embody.’ (Pitcher v. Hennessey, 48 N. Y. 415, 423.) ”
It clearly and convincingly appears from the record here that this is a case of a mistake on the part of the plaintiff’s agent in typing the erroneous linear ground measurement, which plaintiff did not discover before submission to the defendant, and the latter, with knowledge of the mistake, trying to take advantage of the error. The writing itself did not represent the understanding of either party as to the area to be fenced which had been agreed upon previous to the writing, and thus did not embody the true agreement, as mutually intended, relating to the area.
This is not a case where the plaintiff unilaterally and mistakenly estimated the linear feet and defendant, without a duty to speak and absent fraud, agreed to the proposal. Should these circumstances have been present in the contract’s reduction to writing, there would be no scrivener’s mistake or mutual mistake of fact, the agreement would be the intended one by the parties, and equity would not “ reform ” the executed contract (Isaacs v. Schmuck, 245 N. Y. 77, 82). This set of circumstances is not presented here by the record.
There is clear and convincing evidence that there was an agreement between the parties as to the area to be fenced before the formal written contract was executed, and then an error was made, albeit by plaintiff, in the reduction of the antecedent expression of the parties into the complete contract (see 3 Cor-bin, Contracts, § 614, pp. 723-724). The only question between the parties on the execution of the written contract was the type of fencing to be constructed and cost thereof, and admittedly these essential terms were not fixed until the formal contract was signed. These latter terms are not sought to be reformed.
The situation presented clearly calls for relief, and the only practicable method of achieving such a result is by the equitable remedy of reformation. The Trial Judge dismissed the com *48 plaint with the finding that the proof failed to show fraud on the part of the defendant. In onr view of the case it was unnecessary for the plaintiff to establish fraud on the part of the defendant. Perhaps reformation could have been predicated upon a unilateral mistake on one side and deceptive conduct on the other side which tended to obscure the true agreement (cf. Restatement, Contracts, § 505). However, the situation presented as a result of thé scrivener’s error was closely akin, if not precisely, to a mutual mistake of fact, and as such was sufficient to call for the application of the equitable doctrine of reformation. Therefore, the judgment should be reversed and the case remitted to Special Term for proceedings not inconsistent with this opinion.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis and Burke concur with Judge Foster ; Judge Fuld concurs in result.
Judgment reversed, with costs in all courts, and matter remitted to Special Term for further proceedings not inconsistent with this opinion.