OPINION OF THE COURT
Kaye, J.
The breach of contract actions before us, remnants of a web of litigation growing out of the commercial misfortunes of Braten Apparel Corporation (BAG), are based on an alleged oral promise of May, 1974 that, in exchange for an additional guarantee and pledge of services, Bankers Trust Company (the Bank) would continue BAC’s credit until at least September 30, 1974. Plaintiffs are Milton Braten, BAC’s president, individually; Erwin and Emery Klineman, Braten’s father-in-law and his brother; and three companies who were suppliers to BAG. A claim by BAG against the Bank based on this same oral promise was dismissed on the Bank’s summary judgment motion, the promise having been found unenforceable in light of the Bank’s integrated written loan agreement with BAG. (Braten Apparel Corp. v Bankers Trust Co., 80 AD2d 786, mot for lv to app den 54 NY2d 604.) The question presented is whether summary judgment dismissing plaintiffs’ separate claims is also appropriate, as the lower courts held.
Underlying the relationship among the parties is a revolving credit agreement between BAG and the Bank, dated March 31, 1971 (the 1971 Agreement). All loans by *160 the Bank to BAG pursuant to the 1971 Agreement were evidenced by demand notes providing that, in the event of BAC’s changed financial circumstances, or at such time as the Bank felt itself insecure, the Bank could call the loan in full and proceed against the collateral. The 1971 Agreement specified further that it could not be changed orally.
By spring, 1974, the ratio of BAC’s accounts receivable to debt set forth in the 1971 Agreement had been exceeded. The Bank felt itself insecure and sought additional collateral from BAG. At that point the events giving rise to the present actions took place. Plaintiffs assert that, at a dinner meeting in May attended by Milton Braten, Erwin Klineman and representatives of the Bank, the Bank promised it would continue financial accommodations to BAG and would not exercise its rights under the 1971 Agreement until at least September 30, 1974, if both Klinemans would provide their personal guarantees and Emery Klineman would return to active participation in the business. This arrangement, however, was not concluded on the spot. Negotiations looking toward a writing ensued, each side represented by counsel. The Bank refused to renew letters of credit for BAG until there was a signed guarantee.
The document ultimately executed by both Klinemans on July 9, 1974, consists of a nine-page “Guaranty”, incorporating the 1971 Agreement as an exhibit. The “Guaranty” makes no reference to the Bank’s alleged promise of forbearance until September 30, 1974. On the contrary, it states that, up to a maximum amount of $500,000 and until September 30,1974, the Klinemans “irrevocably and unconditionally guarantee to the Bank when due, whether by acceleration or otherwise, a certain portion of [BAC’s] liabilities to the Bank”. The “Guaranty” recites that loans .to BAG are secured by an assignment of accounts receivable, that the unpaid principal balance exceeds the aggregate face amounts of the genuine accounts, and that the Klinemans have requested the Bank to continue making advances to BAG even though such advances may exceed the value of the accounts. The “Guaranty” is given, so it says, “in consideration of financial accommodations given, or to be given or continued” to BAG. In fixing the Kline- *161 mans’ obligation, the terms of the 1971 Agreement are woven throughout the “Guaranty”.
After execution of the “Guaranty”, the Bank continued to extend credit to BAG. However, in late August, 1974, in response to financial statements indicating the insolvency of BAG, the Bank called the loan and proceeded against the collateral. Plaintiffs charge that the abrupt termination of BAC’s credit a full five weeks before September 30, 1974 constituted a breach of the oral agreement of May, 1974, which damaged them. Milton Braten claims he lost the value of his investment iii BAG; the Klinemans complain of the increased guarantee and uncompensated services for BAG; and the corporate plaintiffs, who say they knew of and relied on the Bank’s oral promise, assert that they were induced to gear up their production facilities to supply BAG through September 30,1974. Plaintiffs each state that the oral promise of forbearance was made directly to them, and also that each is the third-party beneficiary of the Bank’s oral promise made to the others.
We affirm the decision below, which granted the Bank’s motion for summary judgment dismissing plaintiffs’ claims, but on different grounds.[1]
Before proceeding to a consideration of the three separate groups of claims, we point out that Millerton Agway Coop. v Briarcliff Farms (17 NY2d 57), relied on by all the plaintiffs, is inapposite. That was an action for fraud in the inducement. While plaintiffs have served more than a dozen complaints against the Bank, they do not assert fraud claims in the complaints before us. Nor is Nassau Trust Co. v Montrose Concrete Prods. Corp. (56 NY2d 175) applicable since the waiver plaintiffs seek to enforce is of the Bank’s contractual rights with a third party, BAG.
THE KLINEMANS
The claims of the Klinemans based on an oral promise to them in May, 1974 to continue credit to BAG were appropriately dismissed. The principle which governs this *162 result is simply stated: evidence of what may have been agreed orally between the parties prior to the execution of an integrated written instrument cannot be received to vary the terms of the writing. Here, the oral agreement the Klinemans seek to enforce fails because it contradicts the provisions of the “Guaranty” which they negotiated and signed subsequent to the alleged oral promise and because it is so clearly connected with the “Guaranty” that the parties could have been expected to embody it in that writing. (Mitchill v Lath, 247 NY 377, 380-381.) Such a collateral agreement cannot be separately enforced. (Sabo v Delman, 3 NY2d 155, 161; Fogelson v Rackfay Constr. Co., 300 NY 334, 338.)
In their “Guaranty”, the Klinemans undertake “irrevocably and unconditionally” to guarantee payments to the Bank when due, subject only to the conditions of maximum amount and termination date. The Klinemans would now impose yet a third condition, the extension of financial accommodations to BAG until at least September 30,1974. But such a condition would flatly contradict the Kline-mans’ unconditional promise (Meadow Brook Nat. Bank v Bzura, 20 AD2d 287), and it is therefore unenforceable. (Bank of Suffolk County v Kite, 49 NY2d 827, 828; Long Is. Trust Co. v International Inst. for Packaging Educ., 38 NY2d 493, 497; 57 NY Jur, Suretyship and Guaranty, § 283.) Additionally, the oral promise contradicts the written instrument in the real sense that the “Guaranty” signed by the Klinemans embraces and adopts the 1971 Agreement, which permits the Bank to call the BAG loan and proceed against the collateral.
The “Guaranty” is a complete written instrument. In the absence of a merger clause, as here, the court must determine whether or not there is an integration “by reading the writing in the light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing.” (Ball v Grady, 267 NY 470, 472; Mitchill v Lath, 247 NY 377, 381, supra.) Both a reading of the “Guaranty” and a consideration of the surrounding circumstances lead to the conclusion that the “Guaranty” is a complete written instrument. The “Guaranty” recites that *163 it is given “in consideration of financial accommodations given, or to be given or continued” to BAG. There is no mention of a promise to forbear until September 30 in this clause, dealing with the very subject matter, or in any other part of the “Guaranty”. The parties and their counsel negotiated during a two-month period, resulting in a specially drawn document executed by the Klinemans. Such a fundamental condition would hardly have been omitted.
The Klinemans having no enforceable claim for breach „ of the alleged oral promise, any claims of the remaining plaintiffs as their third-party beneficiaries would also fail. (4 Williston, Contracts [3d ed], § 647.)
MILTON BRATEN
Summary judgment was also properly granted for the Bank as to Milton Braten, BAC’s president. Braten now argues that the Bank made its oral promise to him in his personal capacity, but there are no facts alleged to support the contention that the Bank dealt with him as an individual rather than as the agent of BAC.[2] The exhibits, affidavits and testimony before us indicate that the negotiations in spring, 1974 concerned BAC’s finances, and the transaction involved solely money advances to help BAG alleviate its financial predicament. In his extensive efforts to recover against the Bank on behalf of BAG, Braten himself has in testimony and affidavit described material events and his participation in them exclusively in terms of benefit to BAG. His actions throughout were consistent with his representation of BAC’s interests, and with shoring up the corporation’s finances. There is no factual showing to dispute the Bank’s assertions that it was dealing with Braten as the agent of BAG when it sought further security for BAC’s loan. Braten therefore individually has no claim against the Bank for breach of its alleged oral promise. (Restatement, Agency 2d, §§ 363, 372, subd [2].)
THE CORPORATE PLAINTIFFS
There is no evidence of any direct agreement between the Bank and the corporate plaintiffs. Moreover, in order to claim as third-party beneficiaries they must show that *164 promises were in some way made for their benefit, and there is no support in the record for such a contention. Here, although a continuation of the. Bank’s extension of credit to BAG might have benefited them as suppliers, there is no proof of intent to give them any independent right. They are at best incidental beneficiaries with no action against the Bank for breach of the alleged promise. (Tomaso, Feitner & Lane v Brown, 4 NY2d 391, 393; 22 NY Jur 2d, Contracts, § 274.) Accordingly, it was proper to grant summary judgment against them as well.
For the reasons stated above, the orders of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
In each case: Order affirmed, with costs.

. Summary judgment was granted below on the basis that the dismissal of claims by BAG on a similar promise requires dismissal of plaintiffs’ claims. But BAC’s claims based on the oral agreement were precluded by the 1971 Agreement, to which these plaintiffs were not parties, while plaintiffs’ actions are based on oral promises allegedly made to or for them. Given these differences, neither collateral estoppel nor res judicata is applicable.

. Braten’s conclusory assertion in an affidavit that the Bank’s promise was nonetheless a promise to him individually does not raise an issue of fact so as to defeat summary judgment. (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338; 342.)