**LIBERTY MUTUAL INSURANCE COMPANY, et ano.,
Plaintiffs,**

v.

**YORK HUNTER, INC., Defendant.**

**No. 96 Civ. 4116(LAK).**

United States District Court,
S.D. New York.

Nov. 26, 1996.

Herbert Dicker, Marshall T. Potashner, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Plaintiffs.

John J. LaGumina, Quinn & LaGumina, L.L.P., Purchase, NY, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff insurers[1] in this action seek to recover unpaid insurance premiums. The defendant insured counterclaims for a declaration that the plaintiffs are obliged to defend and indemnify a joint venture in which defendant is a participant against two personal injury claims now pending in Bronx County or, in the alternative, for damages for breach of contract, fraud, *prima facie* tort, negligence, and breach of an allegedly implied duty of good faith. The parties have cross-moved for partial summary judgment with respect to defendant's prayer for a declaratory judgment. Plaintiffs have moved also for summary judgment dismissing defendant's alternative damage claims. As the parties have resolved Liberty's claims against the defendant by stipulation, these motions address all remaining issues in the case.

### Facts

Defendant York Hunter, Inc. ("York Hunter") is in the construction management business and is one of two participants in a joint venture called York Hunter/Full Spectrum/Hill Slater ("YHFS"), which was formed in 1993 for the purpose of providing construction management services to the Dormitory Authority of the State of New York for the construction phase of work at the Brooklyn Psychiatric Center. The crux of the dispute between the parties concerns the fact that YHFS is not included as a named insured to the commercial general liability ("CGL") policy it issued to York Hunter for the period June 30, 1994 through June 30, 1995. The tale begins in mid–1993, not long after YHFS was formed.

### The 1993–94 Policy

In July 1993, Stephen B. Blaine of York Hunter and William J. Doyle III of Trinder & Norwood, York Hunter's insurance broker, met with Dan McGrath of Liberty to discuss what would be included in York Hunter's 1993–94 CGL policy. They agreed that the policy would cover as named insureds not only York Hunter, but several York Hunter joint ventures including YHFS. (Blaine Aff. ¶ 4) On July 16, 1993, Doyle wrote to McGrath to confirm what had transpired at the meeting and specifically referred to the agreement to include YHFS as a named insured.[2] (*Id.* Ex. A)

In the fall of 1993, Liberty sent the policy (No. TB2–121–080468013 [hereinafter the "1993–94 Policy"]) to Doyle, who noticed that it failed to include YHFS. He wrote to McGrath on November 1, 1993 and pointed out the omission. (*Id.* ¶ 5 & Ex. B) McGrath responded in writing that the named insured would be amended as requested. (*Id.* ¶ 6 & Ex. C) No amendment or policy endorsement implementing McGrath's assurance ever was issued.

### The 1994–95 Policy

During the summer of 1994, the parties held another meeting to discuss the terms of the renewal of the 1993–94 Policy for 1994–95. Blaine states that Doyle—in subsequent discussions with McGrath in which Blaine does not claim to have participated—reminded McGrath that he was still awaiting a correction of the named insured for the 1993–94 Policy. McGrath, says Blaine, assured Doyle that the endorsement for the

---

1. The plaintiffs are Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company. As there is no need to distinguish between them for purposes of these motions, the Court refers to them collectively as "Liberty."

2. The letter noted also that Doyle had not known at the time of the meeting that YHFS was a joint venture. (Blaine Aff.Ex. A)

1993–94 Policy was being processed and that the 1994–95 Policy would list YHFS as a named insured.[3] (*Id.* ¶ 7) Subsequently, Liberty issued and sent to Doyle the renewal policy (No. TB2–121–0804680014 [hereinafter the "1994–95 Policy"]), which did not list YHFS as a named insured.

On December 15, 1994, Doyle, who was York Hunter's broker and not Liberty's agent, prepared a Certificate of Insurance listing YHFS as a named insured[4] and sent a copy to Liberty's McGrath with a cover letter asking that he list YHFS as a named insured on the 1994–95 Policy as allegedly agreed. (*Id.* ¶ 8 & Ex. E)

### The January 17, 1995 Meeting

On January 17, 1995, Doyle, on behalf of York Hunter met with Liberty's Todd Jerman and Bill McGlin. According to a letter written by Doyle in December 1995 and to Blaine's hearsay affidavit, Doyle again "instructed" Liberty to correct the 1994–95 Policy to list YHFS as a named insured. It is undisputed, however, that Jerman explained to Doyle on that occasion that YHFS had not been made a named insured on the 1994–95 Policy, although he told Doyle that he was working with Liberty's underwriters to try to have it added. (Jerman Aff. ¶¶ 13–16)

### Subsequent Events

On April 7, 1995, Doyle sent Jerman a fax enclosing copies of prior correspondence, including the November 1993 exchange between Doyle and McGrath, and voiced his conviction "that Liberty has and continues to insure the subject joint ventures." (Blaine Aff.Ex. F)

In June 1995, two injuries occurred at the Brooklyn site being managed by YHFS resulting in the commencement in December 1995 of the two personal injury suits against YHFS which are the subject of the dispute here. (*Id.* ¶ 12) On December 13, 1995, York Hunter informed Doyle that Liberty had turned down a claim, apparently one of those at issue, on the ground that YHFS was not a named insured. Doyle immediately called Jerman to complain. (*Id.* Ex. D) In any

event, Liberty in due course disclaimed any obligation to defend or indemnify with respect to those actions on the ground that YHFS was not a named insured under the 1994–95 Policy, the policy covering the period in which the occurrences giving rise to the claims occurred. (*Id.;* Blaine Reply Aff.Ex. A)

### Discussion

York Hunter asserts six counterclaims, all of which Liberty now seeks to have dismissed. The first seeks a declaration that YHFS was a named insured under the policy and that Liberty is obliged to defend and indemnify it in the two personal injury cases at issue. (Ans. ¶¶ 11–25) The second contends that Liberty's refusal to defend and indemnify constituted breaches of its contract, referring to the insurance policy. (*Id.* ¶¶ 26–28) The third is a claim for fraud, asserting in substance that (i) McGrath's November 9, 1993 letter promised to add YHFS as a named insured notwithstanding that Liberty did not intend to do so, (ii) Liberty repeatedly and falsely represented that YHFS was a named insured when in truth it was not, and (iii) fraudulently failed to advise defendant that YHFS had not been added as a named insured until after the personal injury claims were submitted to it. (*Id.* ¶¶ 29–44) The fourth contends that Liberty's failure to add YHFS as a named insured in the circumstances constituted a *prima facie* tort. (*Id.* ¶¶ 45–50) The fifth alleges that the failure to add YHFS as a named insured was negligent. (*Id.* ¶¶ 51–53) Finally, the sixth counterclaim asserts that the failure to add YHFS constituted a breach of Liberty's duty under the policy to act in good faith. (*Id.* ¶¶ 54–56)

In the briefing of these motions, York Hunter purportedly has added additional claims. It contends that Liberty is estopped to disclaim coverage of YHFS (Def.Mem. 5, 8–9), that the parties agreed to modify the policy (*id.* 6–7), and that the policy should be reformed on the basis of mutual mistake to add YHFS as a named insured (*id.* 10).

---

**3.** Neither Doyle nor McGrath has submitted an affidavit on these motions.

**4.** It is common ground that the Certificate of Insurance issued by Doyle did not affect Liberty's obligations under the policy.

### The Evidence Properly Considered

The synopsis of the evidence offered on these motions demonstrates that York Hunter's case depends in no small measure on Blaine's assertions as to what transpired between his broker, Doyle, and various Liberty representatives, notably Todd Jerman. Perhaps most significantly, Blaine states that Doyle told Jerman in January and April 1995 that Doyle understood that YHFS was covered by the 1994–95 Policy and that Liberty never objected. (Blaine Aff. ¶¶ 9–11) Jerman, for his part, acknowledges that Doyle took the position that YHFS was covered, but states in substance that he disputed the point on behalf of Liberty. He says he told Doyle that YHFS had not been added, but that he was working with the underwriters toward that objective. (Jerman Aff. ¶¶ 13–17) There is no affidavit from Doyle. Jerman's affidavit questions the basis for Blaine's assertions to the contrary. (Id. ¶ 24) In these circumstances, it is important to determine at the outset whether Blaine's assertions may be considered in deciding these motions.

FED.R.CIV.P. 56(e) provides that affidavits supporting or opposing motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Blaine's assertions as to what Doyle said or did not say to Jerman and others at Liberty and *vice versa*, except with respect to the two meetings at which Blaine was present, are inadmissible hearsay. Accordingly, it is undisputed for purposes of these motions that Doyle was advised at the January 17, 1995 meeting and in numerous subsequent telephone calls that YHFS had not been added as a named insured. Although he was told on those occasions that Liberty was working on the issue, he never was told that the matter had been resolved.

5. The second counterclaim incorrectly presupposes that YHFS was a named insured. The sixth is baseless because Liberty cannot be held to have breached the terms of the 1994–95 by not covering YHFS in light of the policy's clause expressly disclaiming responsibility for joint ventures not listed in the Declarations as named

### The Contract Issues

The occurrences giving rise to the claims for which York Hunter seeks defense and indemnity took place in June 1995. The 1994–95 Policy therefore is the relevant document. It specifically provided that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations." (Pl. Ex. 4, § II(4)) And although the first counterclaim asserts that YHFS was a named insured under the policy, it now is undisputed that the policy in fact did not name YHFS as a named insured. (Blaine Aff. ¶ 13; Def. Mem. 4) In consequence, Liberty is entitled to the declaration it seeks and to dismissal of the second and sixth counterclaims [5] unless one of York Hunter's other contract-related theories requires a different result.

### The Alleged Contract to Cover YHFS

York Hunter acknowledges that it has no claim for breach of the policy. Rather, it asserts that "[t]he issue is the ... enforcement of plaintiffs' agreement to correct the policy to add YHFS as a named insured." (Def.Mem. 4) Although the counterclaims do not allege breach of any such agreement, the Court nevertheless will consider the sufficiency of such a claim in order to determine whether an amended pleading so alleging would be a futility.

The Court assumes *arguendo* that McGrath's November 9, 1993 letter (Blaine Aff.Ex. C) modified the *1993–94 Policy* to include YHFS as a named insured. Following the summer 1994 meeting at which Doyle discussed the renewal for the ensuing year, however, Liberty sent Doyle the 1994–95 Policy, which did not list YHFS as a named insured, a fact of which Doyle promptly became aware. At the January 1995 meeting, Jerman made it clear to Doyle that YHFS was not a named insured.

insureds. *See New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (claim for breach of implied covenant of good faith and fair dealing dismissed as duplicative of claim for breach of insurance policy).

The only conceivable basis for a contention that there was a contract to make YHFS a named insured on the *1994–95 Policy*, the policy covering the period during which the occurrences for which York Hunter seeks protection took place, was the fact that the policy was described as a renewal of the 1993–94 Policy. (*See* Def.Reply Mem. 3) York Hunter would have the Court draw from that characterization the conclusion that McGrath's commitment to list YHFS as a named insured in the 1993–94 Policy carried over to the 1994–95 Policy. But the argument is without merit.

■ Whatever characterization is applied to the 1994–95 Policy, the fact is that Liberty issued an entirely new policy for that policy year. It did not simply extend the duration of the 1993–94 Policy. The 1994–95 Policy is a fully integrated contract and is clear and unambiguous on its face. It specifically states that joint ventures not listed in the declarations as named insureds are not covered. Extrinsic evidence to vary, contradict or add to its terms is precluded by the parol evidence rule. *Bersani v. General Accident Fire & Life Assurance Corp.*, 36 N.Y.2d 457, 369 N.Y.S.2d 108, 330 N.E.2d 68 (1975); *Di Costanzo v. Allstate Insurance Co.*, 68 A.D.2d 834, 414 N.Y.S.2d 517 (1st Dep't 1979), *aff'd*, 50 N.Y.2d 832, 430 N.Y.S.2d 51, 407 N.E.2d 1347 (1980). Even if McGrath in his November 9, 1993 letter had manifested an intention to commit Liberty for the 1994–95 policy year—of which there is no evidence whatever—that agreement was merged into the 1994–95 Policy, which was flatly to the contrary. In consequence, there was no enforceable contract between Liberty and York Hunter to include YHFS as a named insured in the 1994–95 Policy.

*Estoppel*

■ York Hunter next argues that Liberty is estopped to deny coverage of YHFS during the 1994–95 policy year by its alleged agreement to add it as a named insured and by its alleged failure to disclose to York Hunter that YHFS was not covered despite its knowledge that York Hunter believed that coverage existed. These contentions invoke both promissory and equitable estoppel.

Promissory estoppel requires that the party sought to be estopped have made a clear and unequivocal promise that induced detrimental reliance by the party asserting the estoppel. *Esquire Radio & Electronics, Inc. v. Montgomery Ward*, 804 F.2d 787, 793 (2d Cir.1986); *Kaplan v. Vincent*, 937 F.Supp. 307, 315 (S.D.N.Y.1996). Here, there is no basis for such a claim. First, McGrath's November 9, 1993 letter made no commitment for the following year. Hence, although it probably would have been a sufficient predicate for a claim of promissory estoppel with respect to the 1993–94 policy year, it was not a sufficient promise for the following year.

■ Even if it were, there can not have been the necessary reliance. Although York Hunter professes ignorance of Liberty's position that YHFS was not a named insured during the 1994–95 policy year, its claim is contradicted by the undisputed evidence, including evidence that York Hunter has adduced. First, it is undisputed that Doyle learned when he received the 1994–95 Policy following the summer 1994 renewal meeting that the new policy did not list YHFS as a named insured. Second, Doyle's December 15, 1994 letter to Liberty (Blaine Aff.Ex. E) evidences Doyle's awareness that YHFS had not been added to the declarations. Third, Jerman's affidavit stating that he told Doyle at the January 17, 1995 meeting and subsequently that YHFS had not been added to the policy, although he would try to bring that about, is unrebutted. Finally, Doyle's April 7, 1995 fax to Jerman enclosing the prior correspondence in support of his contention that Liberty was obliged to cover YHFS evidences his awareness that Liberty disputed that assertion.

Doyle, of course, was York Hunter's agent. York Hunter therefore is chargeable with Doyle's knowledge concerning York Hunter's affairs. *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 488 N.E.2d 828 (1985); *Hayden v. S & W Meat & Poultry*, 221 A.D.2d 823, 825, 634 N.Y.S.2d 226, 227 (3d Dep't 1995). Hence, it is perfectly plain, at a minimum, that York Hunter was chargeable with Doyle's knowledge that Liberty took the position that it did not cover

YHFS in the 1994–95 policy year. In these circumstances, it cannot justifiably have relied to its detriment on any action or inaction by Liberty in failing to secure alternate coverage. And while the elements of equitable estoppel vary somewhat from those of promissory estoppel, this lack of detrimental reliance is fatal to both theories. *Nassau Trust Co. v. Montrose Concrete Products, Corp.*, 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 667, 436 N.E.2d 1265, 1268 (1982); *Connecticut National Bank v. Peach Lake Plaza*, 204 A.D.2d 909, 909, 612 N.Y.S.2d 494, 495 (3d Dep't 1994).

*Reformation*

■ Contracts, including insurance policies, may be reformed to reflect the actual intentions of the parties where, through mutual mistake or unilateral mistake coupled with fraud, they fail to do so. *E.g., Porter v. Commercial Casualty Insurance Co.*, 292 N.Y. 176, 181, 54 N.E.2d 353 (1944); *Loyalty Life Insurance Co. v. Fredenberg*, 214 A.D.2d 297, 632 N.Y.S.2d 901 (3d Dep't 1995); *German Flats v. Aetna Casualty & Surety Co.*, 174 A.D.2d 1003, 572 N.Y.S.2d 819 (4th Dep't 1991). Indeed, there is authority for the proposition that "when through innocent mistake the nature of ownership of property to be insured is misdescribed, that constitutes mutual error for the purposes of reformation, even though the insurer is not aware of the error." *Crivella v. Transit Casualty Co.*, 116 A.D.2d 1007, 498 N.Y.S.2d 627 (4th Dep't 1986).

■ Liberty contends that the failure to list YHFS as an additional insured was no mistake. It maintains that its underwriting department has a long-standing practice not to allow joint ventures to be added to existing policies because a joint venture, by its very nature, might require different experience and schedule rating. It therefore would allow joint ventures to be underwritten only on separate policies that would generate their own premiums based on the experience and schedule ratings of the joint ventures. (Schmitt Aff. ¶¶ 3–8)

York Hunter's Blaine disputes these assertions. He points out that the named insured endorsement for the 1994–95 Policy included as named insureds YH–GDM Construction Venture and YH–GPR Special Projects Venture, both of which were joint ventures. He points also to 1992 correspondence with Liberty's McGrath which, read liberally in favor of the insured, lends some support to York Hunter's contention that Liberty would not have required the payment of additional premium to ensure YHFS because it was engaged only in consulting. (Blaine Reply Aff. ¶¶ 4–5 & Ex. D)

There is, to be sure, a good deal of evidence to support Liberty's contention that the omission of YHFS was no mistake. From the time Doyle first raised the issue after receiving the 1994–95 Policy, Liberty repeatedly made clear that YHFS was not covered and that it would work with its underwriting department concerning the issue. Nevertheless, in view of the fact that the inclusion of other joint ventures on the named insured endorsement of the 1994–95 Policy directly contradicts Liberty's contention that it did not write such coverage in that manner and also of McGrath's ready willingness to add YHFS as a named insured in the prior year, there is a genuine issue of fact as to the intention of the parties for the 1994–95 policy year.

*Loyalty Life Insurance Co. v. Fredenberg*, 214 A.D.2d 297, 632 N.Y.S.2d 901 (3d Dep't 1995), relied upon by Liberty, does not require a different result. It merely states the general principle just described and adds that "an insurer who establishes that its insured knew or should have known of an obvious scrivener's mistake in the policy" is entitled to reformation. 632 N.Y.S.2d at 902. In other words, reformation will be granted where the writing fails to express the agreement of the parties. Given McGrath's 1993 letter and the lack of any evidence of any change in circumstances by the time the 1994–95 policy was issued, York Hunter conceivably may be able to convince the trier that Liberty intended to include YHFS in that policy despite its subsequent denials.

*Tort Claims*

■ The gravamen of York Hunter's tort claims is that Liberty promised to include YHFS as a named insured in 1994–95 and failed to do so. But a contract claim

may not be pleaded as a tort claim "unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987). Here, each of York Hunter's tort claims fails to allege breach of such an independent duty, fails to allege at least one essential element of the tort asserted, or both.

If Liberty had any duty to include YHFS as a named insured, that duty arose exclusively from the alleged agreement with York Hunter to do so. Hence, the assertion that Liberty is liable in negligence for the failure to include YHFS is merely a reiteration of the breach of contract allegations with the added characterization of Liberty's actions as negligent or grossly negligent. This is insufficient to state a claim upon which relief may be granted because no duty independent of the contract existed. *See Clark–Fitzpatrick,* 70 N.Y.2d at 389, 521 N.Y.S.2d at 656, 516 N.E.2d at 193. The fifth counterclaim therefore cannot stand.

The fourth counterclaim is for *prima facie* tort, the elements of which are (1) intentional infliction of harm (2) causing special damages (3) without excuse or justification (4) by an act or acts that otherwise would be lawful. *E.g., Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 680 (S.D.N.Y.1995). In order to satisfy the third element, the plaintiff must allege and prove that the conduct complained of was "done with the sole intent to harm." *Id.* at 681. "Motives such as profit, self-interest, or business advantage will defeat a *prima facie* tort claim." *Id.; accord, Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir.1985). York Hunter has failed to plead or adduce proof of the disinterested malevolence that is essential to state a claim for *prima facie* tort.

The fraud claim too is insufficient. While a promise made without the intention to perform may be actionable, one cannot state a claim for fraud based on such a theory simply by making a conclusory assertion that the promisor did not intend to perform at the time the promise was made. *Lomaglio Associates, Inc. v. LBK Marketing Corp.,* 892 F.Supp. 89, 94 (S.D.N.Y.1995) (fraud based on contract must be pleaded with particularity, including circumstances showing intent to deceive); *Caniglia v. Chicago Tribune—New York News Syndicate, Inc.,* 204 A.D.2d 233, 612 N.Y.S.2d 146 (1st Dep't 1994) (same). Here, McGrath's November 9, 1993 promise to add YHFS as an additional insured with respect to the 1993–94 Policy did not extend in terms to the 1994–95 Policy here at issue. Even if it did, there is nothing whatever in the counterclaim or in York Hunter's evidence that would permit an inference that Liberty, at the time McGrath wrote, did not intend to perform whatever promise he made.[6]

### Conclusion

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted as follows:

(1) With respect to the first counterclaim, it is adjudged that YHFS is not a named insured listed in the declarations to the 1994–95 Policy, as written and, in consequence, that plaintiffs are not obliged pursuant to that Policy, as written, to defend or indemnify the two personal injury suits that are the subject of this case.

(2) The second, third, fourth, fifth and sixth counterclaims are dismissed. Defendant's cross-motion for partial summary judgment is denied.

Inasmuch as defendant has raised a genuine issue of material fact as to whether the failure of the 1994–95 Policy to list YHFS in the declarations as a named insured was the product of mutual mistake, defendant is granted leave to file an amended answer and counterclaim asserting a claim for reformation of the 1994–95 Policy on that ground, within 10 days of the date hereof.

SO ORDERED.

---

**6.** There is no evidence to support York Hunter's allegations that Liberty falsely represented that YHFS was a named insured or that it failed, fraudulently or otherwise, to advise York Hunter that it was not until after the occurrences that gave rise to the claims here in suit.