**WAYLAND INVESTMENT FUND, LLC, Plaintiff,**

v.

**MILLENIUM SEACARRIERS, INC., Defendant.**

No. 00Civ.2349(SHS).

United States District Court, S.D. New York.

Sept. 7, 2000.

451

Anthony Princi, Orrick, Herrington & Sutcliffe, L.L.P., New York City, for Plaintiff.

Christopher F. Graham, Thacher Proffitt & Wood, New York City, for Defendant.

## OPINION & ORDER

STEIN, District Judge.

Plaintiff Wayland Investment Fund, LLC ("Wayland") brought this action alleging that defendant Millenium Seacarriers, Inc. ("Millenium") erroneously calculated the interest paid on approximately $74 million in Exchange Notes issued by Millenium and purchased by Wayland. Prior to the commencement of discovery, Millenium has moved to dismiss the breach of contract claim in the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that interest was paid in conformity with the clear and unambiguous terms of the Exchange Notes. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are as alleged in the Second Amended Complaint ("complaint"). According to the complaint, Wayland is a Delaware limited liability corporation with its place of business in Minnesota, and Millenium is a corporation organized under the laws of the Cayman Islands with its place of business there as well. *See* Second Am. Compl. ¶¶ 2–3. In July 1998, Millenium offered 12% First Priority Ship Mortgage Notes (the "Notes") for sale through a publicly disseminated Offering Circular. *See id .* ¶ 7, Ex. A. Because the

Notes were unregistered, Millenium subsequently completed an exchange offer whereby the Notes were privately exchanged for Exchange Notes, and Millenium registered the Exchange Notes through a prospectus ("Prospectus") filed with the Securities and Exchange Commission ("SEC"). *See id.* ¶¶ 7–9, Ex. B.

The Offering Circular stated, "The Issue Price to investors per Unit will be $965.93, representing a yield to maturity on the Notes of 12¾% (computed on a semi-annual bond equivalent basis) calculated from July 24, 1998. The Notes will bear original issue discount ('OID')." Offering Circular at 1, annexed to Second Am. Compl. as Ex. A. The Offering Circular also represented that the Exchange Notes, which were to be offered pursuant to a prospectus, "would have terms substantially identical in all material respects to the [original] Notes." Second Am. Compl. ¶ 8. Similarly, the Prospectus stated, "The issue price of the Units to investors was $965.93 representing a yield to maturity on the Notes of 12¾% (computed on a semi-annual bond equivalent basis calculated from July 24, 1998)." Prospectus at 35, annexed to Second Am. Compl. as Ex. B. In reliance on these and other similar terms of the Offering Circular and the Prospectus, Wayland purchased over 25% of the Exchange Notes at a cost of $73.9 million. *See* Second Am. Compl. ¶ 17.

The Exchange Notes state that Millenium "promises to pay cash interest on the Accreted Value of this Security at the rate per annum shown above. The Company will pay interest semiannually on January 15 and July 15 of each year." Exchange Note at 3, annexed to Second Am. Compl. as Ex. C. Four lines "above" that phrase, the Exchange Note states that it is a "12% First Priority Ship Mortgage Exchange Note Due 2005." *Id.* In addition, the governing Indenture explains the calculation of accreted value. *See* Indenture § 1.01, at 2, annexed to Second Am. Compl. as Ex. D. According to the complaint, "[i]f interest is paid on the Accreted Value of the

Exchange Notes" pursuant to these terms, "then the yield to maturity on the Exchange Notes is less than 12¾%." Second Am. Compl. ¶ 18. In other words, plaintiff alleges that the actual yield to maturity of the Exchange Notes is less than the 12 ¾% rate promised by Millenium in the Offering Circular and the Prospectus.

On July 15, 1999, and January 15, 2000, Millenium made interest payments that were calculated based on accreted value in accordance with the terms of the Exchange Notes but allegedly contrary to the terms of the Offering Circular and the Prospectus filed with the SEC. *See id.* ¶¶ 20–21. On February 3, 2000, Wayland sent Millenium a letter asserting that Millenium had defaulted on its obligation to pay interest and invoking certain acceleration provisions requiring immediate payment of the entire principal of and accrued but unpaid interest on the Exchange Notes. *See id.* ¶¶ 22–24, Ex. E. The acceleration clause, set forth in the Indenture, provides:

> If an Event of Default … occurs and is continuing, … the Holders of at least 25% in principal of amount at maturity of the Securities by notice to the Company and the Trustee, may declare the principal of and accrued but unpaid interest on all the Securities to be due and payable. Upon such a declaration, such principal and unpaid interest shall be due and payable immediately.

Indenture § 6.02, at 50, annexed to Second Am. Compl. as Ex. D. The Indenture further explains, "An 'Event of Default' occurs if: (1) the Company defaults in any payment of interest on any Security when the same becomes due and payable, and such default continues for a period of 30 days." *Id.* § 6.01, at 48.

Approximately seven weeks after it sent its letter, Wayland commenced this action. The complaint asserts five causes of action: mutual mistake, breach of contract, common law fraud, negligent misrepresentation, and violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule

10b–5 promulgated thereunder. The breach of contract claim rests on allegations that "Millenium has not paid and Wayland has not received the proper amount of interest that was intended to be paid on the Exchange Notes," and that "Millenium's failure to pay the principal of and accrued but unpaid interest on all of the Exchange Notes constitutes a breach of contract." Second Am. Compl. ¶¶ 30, 33. As noted above, Millenium has now moved to dismiss the breach of contract claim for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. Choice of law

██ The parties agree that New York law governs this action. Accordingly, this Court need not conduct any further choice of law analysis. *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997).

### II. Motion to dismiss

### A. Standard

When presented with a motion to dismiss, a court must assume that the allegations set forth in the complaint are true, and the motion may be granted " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir.1999) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)), *cert. denied*, —— U.S. ——, 120 S.Ct. 799, 145 L.Ed.2d 673 (2000).

In deciding a motion to dismiss, a court must rely only on the factual allegations set forth in the complaint itself and not on additional matters asserted in affidavits, exhibits, or papers submitted in conjunction with the motion. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); *Bartolini v. Stancari*, No. 97 Civ. 7941, 1998 WL 460160, at *2 n. 1 (S.D.N.Y. Aug. 5, 1998). However, a court may consider any written instrument that is incorporated by reference in the complaint or that is integral to the complaint, without converting the proceeding to one for summary judgment. *See International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)). Accordingly, the Offering Circular, Mortgage Notes, Prospectus, Exchange Notes, and Indenture will be considered on this motion.

### B. Analysis

Millenium contends that Wayland's breach of contract claim must fail because it is undisputed that interest was paid based on accreted value in accord with the clear and unambiguous terms of the Exchange Notes, and because the parol evidence rule prevents consideration of any alternative term of payment. In response, Wayland contends that the terms of the Exchange Notes reflect a mutual mistake by both parties because both parties intended that interest be paid according to the terms of the Offering Circular, *i.e.*, at 12⅞%. Because a mutual mistake is involved, Wayland continues, the parol evidence rule is inapplicable and therefore evidence outside the four corners of the written instrument can be considered by this Court.

### 1. Parol evidence rule

The New York Court of Appeals has explained the parol evidence rule in the following terms:

A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing. That rule imparts stability to commercial transactions by

safeguarding against fraudulent claims, perjury, death of witnesses[,] infirmity of memory and the fear that the jury will improperly evaluate the extrinsic evidence.

*W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440, 443 (1990) (internal quotation marks, alterations, and citations omitted).

■■■ Thus, the parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous. *Id.* at 162–63, 566 N.E.2d at 642, 565 N.Y.S.2d at 443. If the terms are ambiguous or contradictory, however, the rule permits the consideration of such evidence not to alter the terms but solely to ascertain the true meaning of the terms. *See generally Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998); *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988); *Gambling v. Commissioner of Internal Revenue,* 682 F.2d 296, 300 (2d Cir.1982); 58 N.Y. Jur.2d Evidence & Witnesses §§ 555, 557 (1986); 80 N.Y. Jur.2d Negotiable Instruments §§ 490, 515, 753 (1986). Moreover, the parol evidence rule is a rule of substantive law rather than one of procedure or evidence. *See Woodling v. Garrett Corp.,* 813 F.2d 543, 552 (2d Cir.1987); *Potsdam Cent. Schs. v. Honeywell, Inc.,* 120 A.D.2d 798, 799, 501 N.Y.S.2d 535, 537 (3d Dep't 1986); 19A N.Y. Jur.2d Conflict of Laws § 47 (1999); 58 N.Y. Jur.2d Evidence & Witnesses § 557 (1986).

■■■ Application of the parol evidence rule requires a three-step inquiry: first, whether the written contract is an integrated agreement; if it is, then, second, whether the language of the written contract is clear or is ambiguous; and, if the language is clear, then third, applying that clear language, whether Wayland has alleged a breach of the contract. *See Investors Ins. Co. v. Dorinco Reinsurance Co.,*

917 F.2d 100, 103–05 (2d Cir.1990); *see also Machine–Outils Henri Line, Ltee v. Morey Machinery, Inc.,* No. 94 Civ. 8880, 1996 WL 254863, at *6 (S.D.N.Y. May 14, 1996).

### 2. Integration

■■■ The first step in applying the parol evidence rule is to assess whether the written contract is "integrated": an integrated contract is one which "represents the entire understanding of the parties to the transaction." *Investors Ins. Co.,* 917 F.2d at 104. "[U]nder New York law a contract which appears complete on its face is an integrated agreement as a matter of law." *Battery Steamship Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 n. 3 (2d Cir.1975) (citing *Higgs v. De Maziroff,* 263 N.Y. 473, 478, 189 N.E. 555, 557 (1934)); *see Raine v. Paramount Pictures Corp.,* No. 97 Civ. 3553, 1998 WL 655545, at*16 n. 12 (S.D.N.Y. Sept. 24, 1998). Therefore, if the written document " 'appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, [then] it constitutes the contract between them, and is presumed to contain the whole of that contract.' " *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 476–77 (S.D.N.Y.1988) (quoting *Eighmie v. Taylor,* 98 N.Y. 288, 1885 WL 10558 (1885)). Where, as here, a party points to another agreement beyond the four corners of the contract, and the contract itself lacks a merger clause, "the court must determine whether or not there is an integration 'by reading the writing in the light of surrounding circumstances, and by determining whether or not the [other] agreement was one which the parties would ordinarily be expected to embody in the writing.' " *Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 162, 456 N.E.2d 802, 805, 468 N.Y.S.2d 861, 864 (1983) (quoting *Ball v. Grady,* 267 N.Y. 470, 472, 196 N.E. 402, 403 (1935)).

■ Accepting the allegations of the complaint as true, the terms of the Exchange Notes and the Indenture governing the Exchange Notes meet this standard. The terms reflect precisely " 'the sort of complex arrangement which is customarily reduced to writing.' " *Adler & Shaykin*, 721 F.Supp. at 477 (quoting *Manufacturers Hanover Trust Co. v. Margolis*, 115 A.D.2d 406, 407–08, 496 N.Y.S.2d 36, 37 (1st Dep't 1985)). The terms contain provisions for the calculation and payment of interest, amending the terms, defaults and remedies, and the various other considerations that normally arise in the context of an arrangement for the payment of interest on a note. *See generally* Second Am. Compl. Ex. C, D. On their face, the terms of the Exchange Notes and the Indenture are complete. Although Wayland points to the terms of the Offering Circular and Prospectus as reflecting the "real" agreement of the parties, the subject of those terms is the calculation of interest, and hence those terms are ones that the parties would ordinarily be expected to embody in the language of the Exchange Notes themselves. *See Braten*, 60 N.Y.2d at 162, 456 N.E.2d at 805, 468 N.Y.S.2d at 864. In *Braten*, for example, the New York Court of Appeals unanimously determined that an alleged agreement to forbear "would hardly have been omitted" from a written guaranty. So, too, in this case, the interest rate "would hardly have been omitted"—and, in fact, was not omitted—from the terms of the Exchange Note. *See Braten*, 60 N.Y.2d at 163, 456 N.E.2d at 805, 468 N.Y.S.2d at 864. Accordingly, this Court finds that the Exchange Notes and their governing Indenture constitute the integrated agreement of the parties.

3. Interpretation

■ The next step is to determine whether the language of the written instrument is clear or whether it is ambiguous. *See Investors Ins. Co.*, 917 F.2d at 104. "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs.*, 77 N.Y.2d at 162, 566 N.E.2d at 642, 565 N.Y.S.2d at 443; *see Alexander & Alexander Servs.*, 136 F.3d at 86. An ambiguity arises if "the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Alexander & Alexander Servs.*, 136 F.3d at 86 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)). "It is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity' " where none exists. *W.W.W. Assocs.*, 77 N.Y.2d at 163, 566 N.E.2d at 642, 565 N.Y.S.2d at 443 (quoting *Intercontinental Planning v. Daystrom, Inc.*, 24 N.Y.2d 372, 379, 248 N.E.2d 576, 580, 300 N.Y.S.2d 817, 822 (1969)); *see Alexander & Alexander Servs.*, 136 F.3d at 86; *see also Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157, 468 N.Y.S.2d 649, 654 (2d Dep't 1983).

In this context, Wayland does not contend that the terms of the Exchange Notes and the Indenture are ambiguous or that they should somehow be construed to require the payment of interest at the rate of 12¾% as stated in the Offering Circular and the Prospectus. To the contrary, Wayland maintains that those terms were included only by "mutual mistake" and that "[i]f interest is paid on the Accreted Value of the Exchange Notes, then the yield to maturity on the Exchange Notes is less than 12¾%," the rate allegedly intended by the parties. Second Am. Compl. ¶¶ 18–19. Because interpreting the interest provisions of the Exchange Notes to conform to the Offering Circular and Prospectus would nullify those provisions, as Wayland effectively—and properly—concedes, those terms are clear and unambiguous as a matter of law. *See United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 109 (2d Cir.1993) (no ambiguity

where alternative interpretation "would violate the principle that meaning and effect should be given to all terms of a contract"); *Norwest Financial, Inc. v. Fernandez,* No. 98 Civ. 6635, 1999 WL 946786, at *4 (S.D.N.Y. Oct. 19, 1999).

4. Breach

 The third and final step is to ask whether, applying the clear contractual terms, Wayland has alleged a breach of the written contract. *See Investors Ins. Co.,* 917 F.2d at 104–05. Wayland alleges that each of the contested interest payments "was made on the Accreted Value of the Exchange Notes," precisely as mandated by the terms of the Exchange Notes and the Indenture. Second Am. Compl. ¶¶ 20–21. Instead, Wayland complains that these payments were "not on the principal amount at maturity of the Exchange Notes, as required to provide a yield to maturity of 12 ¾%," *id.,* and that the Millenium's failure to comply with the acceleration provisions upon notice of this default constituted a breach of contract, *see id.* ¶ 33. However, this claim fails for two reasons. First, to the extent Wayland alleges that Millenium's default triggered the accelerations provisions, these allegations explicitly concede that the interest payments made by Millenium comported with the clear and unambiguous language of the integrated written agreement between the parties. Second, to the extent Wayland alleges these payments were governed by a separate, earlier contract whose terms are evidenced by the Offering Circular and the Prospectus, the parol evidence rule bars consideration of such contradictory evidence and the earlier contract would be unenforceable. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 659–61 (2d Cir.1996); *Braten,* 60 N.Y.2d at 161–63, 456 N.E.2d at 805, 468 N.Y.S.2d at 864.

 In response, Wayland points to authority for the proposition that the parol evidence rule does not apply in cases of fraud or mutual mistake. *See, e.g., Ma-rine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 387, 425 N.E.2d 805, 807, 442 N.Y.S.2d 417, 419 (1981). Wayland contends that because the parties had agreed that interest would be paid according to the terms of the Offering Circular and the Prospectus, and because a contrary provision was included in the Exchange Notes only by mutual mistake of the parties, the allegation of mutual mistake renders the parol evidence rule inapplicable. However, "it is hornbook law that parties cannot alter or contradict the express terms of one specific provision of an integrated contract in writing ... by pointing to parole evidence of [fraud or mutual mistake], where the party ... does not dispute other relevant provisions of the contract and in effect concedes their validity." *Raine,* 1998 WL 655545, at *16 (footnote omitted) (citing *Adler & Shaykin,* 721 F.Supp. at 480); *see Meinrath v. Singer,* 482 F.Supp. 457, 460–61 (S.D.N.Y.1979).

The most basic reason for this result is that breach of contract and mutual mistake are separate causes of action, the latter of which originated in equity precisely in order to remedy those situations in which an action at law for breach of contract afforded no relief. *See George Backer Management Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 218–19, 385 N.E.2d 1062, 1066, 413 N.Y.S.2d 135, 139 (1978). As a consequence, if a party asserts causes of action for both breach of contract and mutual mistake, courts will dismiss the breach of contract claim based on the clear language of the contract before even considering whether extrinsic evidence of mutual mistake might be admissible to reform the terms of the contract. *See Investors Ins. Co.,* 917 F.2d at 103–06; *Gerard v. Almouli,* 746 F.2d 936, 938–39 (2d Cir.1984); *Liberty Mut. Ins. Co. v. York Hunter, Inc.,* 945 F.Supp. 742, 746–48 (S.D.N.Y.1996); *Bell v. Marine Midland Banks, Inc.,* 230 A.D.2d 758, 758–59, 646 N.Y.S.2d 366, 367 (2d Dep't 1996), *leave denied,* 89 N.Y.2d 808, 678 N.E.2d 501, 655 N.Y.S.2d 888 (1997); *Hi Tor Indus. Park, Inc. v. Chem-*

*ical Bank,* 114 A.D.2d 838, 839–40, 494 N.Y.S.2d 751, 752 (2d Dep't 1985); *Schmidt,* 97 A.D.2d at 156–59, 468 N.Y.S.2d at 653–55; *Katz v. American Technical Indus., Inc.,* 96 A.D.2d 932, 932–33, 466 N.Y.S.2d 378, 380–81 (2d Dep't 1983).

In the present case, Wayland has alleged a separate claim of mutual mistake and remains free to pursue reformation of the contract on the basis of that claim. *See George Backer Management Corp.,* 46 N.Y.2d at 219–20, 385 N.E.2d at 1066, 413 N.Y.S.2d at 139; *Nash v. Kornblum,* 12 N.Y.2d 42, 46–47, 186 N.E.2d 551, 553, 234 N.Y.S.2d 697, 700 (1962). The breach of contract claim, however, should be dismissed.

## CONCLUSION

For the reasons stated above, Millenium's motion is granted, and the breach of contract claim is hereby dismissed.