MILFORD PAINTBALL, LLC, ET AL. *v.* WAMPUS
MILFORD ASSOCIATES, LLC
(AC 33312)

Gruendel, Lavine and Bear, Js.

Argued February 9—officially released September 4, 2012

*Richard F. Connors*, for the appellant (defendant).

*Stephen J. Conover*, with whom was *Susan Briggs*, for the appellee (named plaintiff).

*Opinion*

BEAR, J. The defendant, Wampus Milford Associates, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in this commercial lease action. The defendant claims that the court erred in (1) finding that, by the defendant's conduct, it impliedly waived notice requirements under the lease, (2) awarding damages to the plaintiff Milford Paintball, LLC,[1] by virtue of its improper construction of the terms of the parties' lease agreement, (3) concluding that the plaintiff was entitled to recover damages because its conduct violated the Connecticut Unfair Trade Practices Act

---

[1] Kathleen Rorick was a party plaintiff in this action. On February 11, 2010, the defendant filed a motion to dismiss with respect to Rorick. On March 8, 2010, the court granted the motion to dismiss. We therefore refer in this opinion to Milford Paintball, LLC, as the plaintiff.

(CUTPA), General Statutes § 42-110a et seq., and (4) concluding that the defendant's counterclaim had no merit because the plaintiff did not breach the terms of the lease. Because we decide that the court erroneously determined that the defendant impliedly waived its special defenses to the complaint and that this error also undermined the court's disposition of the remaining claims of the parties, we reverse the judgment of the trial court and remand the case, in part, for a new trial.

The following facts, as found by the court in its posttrial memorandum of decision, are relevant to our resolution of the defendant's claims. "On February 10, 2004, the plaintiff and the defendant entered into a lease agreement (lease) for a portion of a building owned by the defendant at 80 Wampus Lane, Milford, Connecticut (premises). On February 13, 2004, Kathleen Rorick, a member of the plaintiff and on its behalf, provided the defendant with a security deposit in the amount of $32,083.52. The premises were to be used by the plaintiff as an indoor paintball field. The execution of the lease followed extensive negotiations between the parties regarding the terms of the lease. Under the lease, each party had certain obligations to be performed before the plaintiff could take occupancy. The plaintiff was to apply for and obtain zoning approval. In addition, § 3.06 of the lease provided that the defendant would undertake extensive renovations to the premises, referred to as 'landlord's work.' Such work was to be completed within ninety days of the plaintiff's receipt of zoning approval. In the event that the landlord's work was not completed, the plaintiff was to provide the defendant with written notice of nonperformance and, upon receipt of such notice, the defendant was required to perform the work, or to commence performance and complete the landlord's work within a reasonable amount of time. On April 23, 2004, the plaintiff sent the defendant a letter notifying the defendant that it had

received zoning approval. The defendant never commenced performance of the landlord's work. In the five months between May and October, 2004, the plaintiff and the defendant had conversations regarding performance of the landlord's work. The plaintiff did not send the defendant written notice of nonperformance. During these conversations the defendant indicated that commencement of the landlord's work would be forthcoming. According to the provisions provided for in the lease, the landlord's work should have been completed by July 23, 2004. In December, 2004, the plaintiff informed the defendant that it would not fulfill the terms of the lease because the defendant failed to perform the landlord's work. Despite requests, the defendant did not return the security deposit to the plaintiff. Thereafter, the defendant leased the space to a third party at a substantially lower rate than that provided for in the lease with the plaintiff."

On February 16, 2005, the plaintiff filed a four count complaint, alleging the defendant's breach of the lease, fraud, restitution and violation of CUTPA. On May 31, 2005, the defendant filed a counterclaim, alleging the plaintiff's breach of the lease. On July 28, 2005, the defendant filed an answer and special defenses, alleging that the plaintiff had failed to provide written notice of its default pursuant to the terms of the lease and that the plaintiff had anticipatorily breached the lease.[2]

The matter proceeded to a trial before the court, and, on December 15, 2010, the court issued a posttrial

---

[2] Although not raised by either party, we also note that the plaintiff failed to file a responsive pleading to the defendant's special defenses. See Practice Book § 10-56, which provides: "The plaintiff's reply pleading to each of the defendant's special defenses may admit some and deny others of the allegations of that defense, or by a general denial of that defense put the defendant upon proof of all the material facts alleged therein." At this juncture, however, we need not determine the effect of such a failure on the issues in this appeal.

memorandum of decision. The court found for the plaintiff on its breach of lease claim, determining that the defendant impliedly had waived its right to written notice prior to default, as provided by § 14.07 of the lease.[3] In particular, the court found that "based upon the evidence before it, the defendant waived its contractual right to written notice of nonperformance of the landlord's work. Such waiver can be implied from the defendant's conduct; specifically, its phone conversations with Kathleen Rorick. In those conversations, representatives of the defendant affirmed their intention to complete the landlord's work, even after the ninety day deadline imposed by the contract had passed, thereby inducing the plaintiff to believe that performance was forthcoming. The evidence further demonstrates that the plaintiff relied on such representations and therefore, it refrained from providing written notice of nonperformance. In addition, the number of phone calls made by Kathleen Rorick to the [defendant] indicates that the plaintiff exercised due diligence in attempting to glean whether the defendant intended to undertake the necessary renovations to the property."

---

[3] Section 14.07 of the lease provides: "Landlord Default. If Landlord fails to perform its obligations in the manner prescribed under this Lease, Tenant shall give Landlord written notice of such non-performance, and Landlord shall have thirty (30) days following its receipt of such notice to either (a) perform its obligations under this Lease, or (b) commence performance of such obligations, if such obligations are not reasonably capable of completion within such thirty (30) day period and to thereafter diligently pursue the same to completion in good faith and in a commercially reasonable manner. In the event Landlord fails to perform such obligations (or commence performance and thereafter diligently pursue, as applicable) within such thirty (30) day period, then Tenant shall be entitled to take reasonable actions on its own behalf to perform such Landlord obligations, and Tenant shall be entitled to reimbursement of all its actual and direct costs and expenses reasonably incurred in connection therewith, including its reasonable attorneys fees and expenses. In the event Landlord fails to pay Tenant for such costs within thirty (30) days of receipt of notice requesting reimbursement therefor, Tenant shall be entitled to set off such costs against its Rent payment obligations owing to Landlord."

The court also found for the plaintiff on its CUTPA claim. Specifically, the court found that "[t]he defendant's conduct cannot be characterized as a mere breach of the lease agreement. Rather, the evidence demonstrates that the defendant engaged in wilful conduct that appears to have been calculated to mislead the plaintiff to believe the landlord's work would be completed. In addition, the defendant falsely represented to the plaintiff that it would return its security deposit and reimburse the plaintiff for expenses incurred in anticipation of taking occupancy of the premises. Despite demands by the plaintiff, it never received these payments. Such conduct constitutes unfair, unethical and unscrupulous conduct and resulted in the plaintiff suffering a significant monetary loss."

The court reserved decision on the issue of damages, ordering the parties to file supplemental briefs. On March 17, 2011, after the presentation of additional evidence and argument on the issue of damages, the court filed a second posttrial memorandum of decision. The court awarded the plaintiff compensatory damages in the amount of $34,987.52, plus prejudgment interest of $21,867.16, for a total compensatory award of $56,854.68. In addition, the court determined that the plaintiff was entitled to taxable costs and, pursuant to the terms of the lease and CUTPA, $73,217 in reasonable attorney's fees. This appeal followed.

On appeal, the defendant raises three claims that relate to the alleged breach of the lease agreement. Specifically, the defendant claims that the court improperly (1) found that the defendant was equitably estopped from asserting its entitlement to written notice of default under the lease, (2) construed the terms of the lease when it found that the defendant's failure to complete landlord's work was a breach of the lease entitling the plaintiff to damages and (3) found

for the plaintiff on the defendant's counterclaim. In addition, the defendant claims that the court improperly found that it had violated CUTPA and improperly awarded the plaintiff attorney's fees pursuant thereto.

The defendant first claims that the court erroneously found that the defendant was equitably estopped, on the basis of telephone conversations its representatives had with Rorick, from asserting its entitlement to written notice of default under the lease. The defendant argues that "there is no credible testimony that statements were made on behalf of the defendant from which one could conclude that it waived the requirement in [§] 14.07 of the [l]ease that the plaintiff give written notice of non-performance of [l]andlord's obligations . . . ."

The court found that the defendant, by its conduct, "*impliedly* waived its contractual right to written notice of nonperformance . . . ."[4] (Emphasis added.) Although using the term waiver, it is apparent from the court's analysis that it was applying the doctrine of equitable estoppel to the defendant's conduct. See *S.H.V.C., Inc.* v. *Roy*, 188 Conn. 503, 510, 450 A.2d 351 (1982) (waiver and estoppel so similar as to be "nearly indistinguishable").

Thus, we begin by setting forth the standard of review applicable to claims of equitable estoppel. "The party

---

[4] We note that neither equitable estoppel nor implied waiver expressly was pleaded in the plaintiff's complaint, nor raised as a special defense to the defendant's counterclaim. Rather, the plaintiff argued before the trial court that the defendant had modified the terms of the contract through its conduct. The court, in its memorandum of decision, stated: "The plaintiff does not dispute that it did not provide the defendant with written notice of its nonperformance of the landlord's work, but argues that the defendant's conduct modified the lease, such that the plaintiff was relieved of its obligation to provide the defendant with written notice of nonperformance. *The defendant* has interpreted the plaintiff's argument as based upon a theory of waiver, and contends that the evidence does not support a finding by this court that it intentionally waived its right to written notice, as provided by § 14.07." (Emphasis added.)

claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. . . .

"Strong public policies have long formed the basis of the doctrine of equitable estoppel. The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. . . . No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong. . . .

"There are two essential elements to an estoppel: the party [against whom it is asserted] must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Citation omitted; internal quotation marks omitted.) *Fischer* v. *Zollino*, 303 Conn. 661, 667–68, 35 A.3d 270 (2012).

In determining that the defendant was estopped from asserting its entitlement to written notice of default

under § 14.07 of the lease, the court expressly relied on conversations between the defendant and Rorick. Specifically, the court found that waiver could be implied from the defendant's telephone conversations with Rorick. Based on our review of the record, however, we do not agree with the trial court's legal conclusion that Rorick's conversations with representatives of the defendant provided a sufficient evidentiary basis to support the application of equitable estoppel as a bar to the defendant's special defense asserting an entitlement to written notice of default under the terms of the lease, and we determine that the court's finding was clearly erroneous.[5]

The record supports the court's conclusion that Rorick and representatives of the defendant engaged in telephone conversations prior to the expiration of the ninety day period wherein the defendant indicated that performance of landlord's work was forthcoming. The defendant's statements, however, made prior to the expiration of the ninety day period merely reiterated the defendant's obligations pursuant to the lease. Moreover, our review of the record does not support the court's finding that the defendant indicated to Rorick subsequent to the expiration of the ninety day period that it would timely perform the landlord's work, and we determine that such finding is clearly erroneous.[6] Accordingly, we cannot conclude that the defendant's oral representations that it would perform the work, which were made prior to the expiration of the ninety

[5] Contrary to the court's determination, Rorick acknowledged that the plaintiff made a tactical business decision to refrain from providing written notice of default to the defendant.

[6] When questioned with regard to communications and conversations with the defendant regarding the landlord's work and the lease after the expiration of the ninety day period, Rorick testified: "I, for a short period of time after the deadline, I was still trying to see if I could get these people moving and to get the work done. And then from then on I basically let my sons take care of it."

day period, were sufficient to trigger application of equitable estoppel to the requirement of written notice of default provided in the lease.

Even if we were to assume that the evidence presented was sufficient to infer that the defendant made affirmative representations to Rorick regarding performance after the expiration of the ninety day period, we, nonetheless, would conclude that application of equitable estoppel would be unwarranted in light of the plaintiff's admission that it intentionally decided not to provide the defendant with the written notice required pursuant to § 14.07 of the lease. "For estoppel to exist, there must be misleading conduct resulting in prejudice to the other party." *Palumbo* v. *Papadopoulos*, 36 Conn. App. 799, 802, 653 A.2d 834 (1995). In this case, for estoppel to apply, the plaintiff would have to demonstrate that the defendant's actions were misleading, causing the plaintiff to believe that it did not have to adhere to the notice provision of the lease. The record, however, does not support a finding that the defendant's representations misled the plaintiff into believing that it was not required to provide written notice. Our review of the record has uncovered no statement that would allow us to infer that the defendant impliedly had waived the written notice provision of the lease and the plaintiff cites to no portion of the record supporting such inference.

Estoppel is an equitable doctrine and, as such, a court should consider the conduct of all interested parties. See *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 566, 316 A.2d 394 (1972) ("[a] party, to be entitled to the benefit of [estoppel] is himself bound to the exercise of good faith" [internal quotation marks omitted]). The record provides evidence that the plaintiff not only was aware that the defendant had failed to perform landlord's work, but that the plaintiff made a conscious business decision not to provide written

notice of default to the defendant, despite knowing that the lease required it. Specifically, the following examination by the defendant's counsel of Rorick took place before the court:

"Q. Why is it that you did not send a, a notice of default under paragraph 14.07 of the lease after July 23, 2004?

"A. If we, we, let's see, we discussed this. And first of all, I did not believe that the lease had really commenced because the landlord's work was never completed. So it was my view that the lease never commenced. Over and above the fact that if we sent a notice of default and they cured it, and we opened at a time, much later time beyond September, the business would have failed.

"From a practical perspective, if we sent your client a notice of default and he cured it, and he took his time like he was aware of with [another tenant], what was dragging out over there for months and months and months and we weren't getting anywhere for months and months and months. And then we sent them a notice of default. And then they didn't, and then they cured it, and we opened long after September, we would have had a problem. The business would definitely have failed."[7]

On the basis of the foregoing, we determine that the court erred in finding that the defendant was estopped from asserting its special defense of an entitlement to written notice under the lease.[8] The parties do not dispute that the defendant never received notice of its

---

[7] Rorick's son, Matthew Rorick, also testified regarding the reason the plaintiff did not give written notice of default to the defendant: "We had a discussion about it, a family meeting, and our time line was so short that we figured they can't even get the work done in thirty days."

[8] Although not raised by the parties in their appellate briefs, our review of the lease revealed the presence of a nonwaiver clause. Specifically, we noted § 17.07 of the lease, which provides: "All waivers shall be in writing and signed by the waiving party. Either party's failure to enforce any provision of this Lease or Landlord's acceptance of Rent shall not be a waiver and shall

default and, moreover, it is apparent that § 14.07 affords the defendant an opportunity to cure upon receipt of such notice. Having determined that the court improperly found that the defendant was estopped from asserting its special defenses, we further determine that, in light of the undisputed fact that the plaintiff failed to provide notice of default to the defendant, the court's judgment in favor of the plaintiff on its breach of contract claim must be reversed.

Although the defendant raises other claims of error, we decline to reach those issues. Where a substantive error permeates the court's findings and underlies its judgment, reversal of the judgment and further proceedings may be required. See, e.g., *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 117 Conn. App. 86, 92, 978 A.2d 118 (2009) (remanding for new trial and declining to reach further claims on appeal where

not prevent either party from enforcing that provision or any other provision of this Lease in the future. . . ." On May 2, 2012, we ordered supplemental briefing on the following issue: "What effect, if any, do paragraph 17.07 of the lease between Wampus Milford Associates, LLC and Milford Paintball, LLC, dated February 10, 2004, and the Supreme Court's decisions in *S.H.V.C.*, [*Inc.*] v. *Roy*, [supra, 188 Conn. 503] and *Christensen* v. *Cutaia*, 211 Conn. 613, 560 A.2d 456 (1989), have on our resolution of the present appeal?"

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 390, 985 A.2d 319 (2009). Nonwaiver clauses in commercial agreements are enforceable, barring the application of waiver and estoppel defenses unless a party establishes the existence of unequal bargaining positions or "sharp dealing." See *Christensen* v. *Cutaia*, supra, 211 Conn. 619–20; *S.H.V.C., Inc.* v. *Roy*, supra, 188 Conn. 507; see also *Webster Bank* v. *Oakley*, 265 Conn. 539, 549–51, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004). The court's memorandum of decision does not address the lease's nonwaiver clause, and the court made no finding of unequal bargaining positions or sharp dealing or that the defendant relinquished its right to enforce the nonwaiver clause by waiving it in a signed writing. Therefore, under the facts presented in the record, we cannot determine that implied waiver or equitable estoppel would provide the plaintiff a means to avoid the nonwaiver provision of the lease.

court's findings and judgment were based on substantive error). Our review of the court's December 15, 2010 memorandum of decision convinces us that its resolution of the present matter was predicated on its erroneous finding that the defendant was estopped from asserting its special defenses. For example, it is apparent that the court did not consider the merits of the defendant's counterclaim, having determined that it "must fail" as a consequence of its finding regarding estoppel. Furthermore, it is apparent that the court did not consider the merits of the plaintiff's fraud and restitution claims, having determined that they were "pleaded as alternative theories of recovery" to the plaintiff's breach of contract claim.[9] See *Woronecki* v. *Trappe*, 228 Conn. 574, 580, 637 A.2d 783 (1994) (where trial court's memorandum of decision makes it clear that it did not consider merits of claim, remand required to determine claim).

The judgment is reversed and the case is remanded to the trial court with direction to render judgment in favor of the defendant on the second count of the plaintiff's complaint sounding in breach of contract, and for a new trial on the defendant's counterclaim and

---

[9] In addition, we note that the court's resolution of the plaintiff's CUTPA claim is predicated on its conclusion that the defendant was in breach of the lease agreement. Specifically, in noting the legal standard it was applying, the court stated: "A breach of contract does not constitute 'a violation of CUTPA unless there are additional facts from which one can infer that the defendant's conduct was also characterized by actions that were unethical, unscrupulous, wilful, or reckless.'" The court then determined that the defendant's conduct, including the telephone calls that the court found occurred after the ninety day period for the work to begin, a finding we have determined to be clearly erroneous, amounted to more than a "mere breach of the lease agreement." Furthermore, it is not clear that the court considered the CUTPA claim in light of the defendant's special defenses, including the special defense regarding the plaintiff's failure to provide written notice, which the court determined the defendant was estopped from asserting and which, as pleaded, applied to all counts of the plaintiff's complaint.

on the first, third and fourth counts of the plaintiff's complaint.

In this opinion the other judges concurred.