******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHANNING REAL ESTATE, LLC *v.* BRIAN GATES
(AC 35786)

Sheldon, Keller and Bear, Js.

*Argued February 6—officially released August 4, 2015*

(Appeal from Superior Court, judicial district of Windham, Vacchelli, J. [motion to open judgment]; A. Santos, J. [motion in limine; judgment].)

*Linda L. Morkan,* with whom were *Stuart D. Rosen* and, on the brief, *Susan Kim* and *Sara R. Simeonidis,* for the appellant (plaintiff).

*Frank J. Liberty,* for the appellee (defendant).

*Opinion*

BEAR, J. This is an action on six promissory notes in which the plaintiff, Channing Real Estate, LLC, appeals from the judgment of the trial court, after a bench trial, in favor of the defendant, Brian Gates, on the plaintiff's complaint, sustaining the defendant's special defenses of misrepresentation and promissory estoppel, and, on the second and third counts of the defendant's counterclaim, alleging negligent misrepresentation and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the plaintiff claims that the court improperly (1) granted the defendant's motion to open the default judgment previously rendered against him due to his negligence, and (2) denied it recovery on the notes after opening the default judgment by admitting parol evidence to vary or contradict the integrated and unambiguous terms of the notes.[1] We agree that the court improperly admitted parol evidence to vary or contradict the unambiguous terms of the notes and, accordingly, we reverse the judgment and remand the case for a new trial.

The following facts and procedural history, as found by the court in its June 4, 2013 memorandum of decision and as apparent in the record, are relevant to our disposition of this appeal. At all relevant times, the plaintiff was a limited liability company organized under New York law with an office in the state of New York. Douglas Chan (Chan), a New York resident, was a member and principal of the plaintiff. Chan's wife, Sharon Chan, was also a member of the plaintiff.

The defendant was a resident of Connecticut. He and his wife, Ulrika Gates, were each 50 percent owners and members of Front Street Commons, LLC (Front Street Commons), a Connecticut limited liability company.[2] Front Street Commons was the owner of two parcels of commercial real estate located in Putnam (properties). The properties were encumbered by mortgages with Putnam Bank. One of the properties was operated formerly as a dry cleaning establishment and, accordingly, was subject to the Hazardous Waste Transfer Act, General Statutes § 22a-134 et seq., upon transfer of the property.

In September, 2007, the defendant and the plaintiff, through Chan, met at the properties and commenced negotiations. Chan was interested in developing a mixed use shopping mall on the properties and on adjacent parcels. In October, 2007, Chan proposed initially that the plaintiff purchase the defendant's 50 percent equity interest in Front Street Commons for $373,640.[3] Under his proposal, a new entity, Front Street Associates, LLC (Front Street Associates), would be created, which would own and develop the properties. Profits and losses were to be divided equally between the owners. The plaintiff, the defendant and Front Street Com-

mons would participate as members of Front Street Associates. During these and subsequent discussions and negotiations, both parties were represented by counsel.

As of December 14, 2007, the parties had entered into an option agreement in principle for the plaintiff to purchase "one half of the subject premises" for $250,000 by January 7, 2008. The closing, as contemplated, did not occur by February 8, 2008. Despite the delays in closing, the parties worked together from August, 2008, until December, 2008. Although the parties exchanged several versions of the proposed operating agreements, they did not execute a contract establishing the joint ownership of the entity that was Front Street Associates. Nor did the parties sign the proposed operating agreements or the option agreement.

On six separate occasions, the defendant asked the plaintiff for varying sums of money, and the plaintiff, in response to each request, agreed to provide the funds requested. The plaintiff and the defendant followed the same routine with respect to each separate transaction. On each occasion, prior to the disbursement of any funds, the plaintiff required that the defendant sign a promissory note. The plaintiff transmitted a promissory note from its office in New York to the defendant in Connecticut. The defendant signed the note in Connecticut and then mailed it to the plaintiff in New York. Thereafter, the plaintiff wired the funds from an account in New York to the defendant's Front Street Commons account at Putnam Bank in Connecticut.

The six promissory notes varied in principal amounts. The first note, dated January 8, 2008, was in the amount of $38,939.50. The second note, dated February 8, 2008,[4] was in the amount of $28,000. The third note, dated March 12, 2008, was in the amount of $50,000. The fourth note, dated January 7, 2009, was in the amount of $17,333.24. The fifth note, dated February 13, 2009, was in the amount of $30,000. The sixth note, dated February 17, 2009, was in the amount of $117,000. The total principal on the notes was $281,272.74.

The plaintiff provided a total of $117,000 to the defendant, as reflected in the sixth note, to complete his purchase of a new residence in Stonington. On February 18, 2009, the defendant sent an e-mail to Sharon Chan, in which he requested a "simple letter . . . to see where all the monies [came] from and [to demonstrate to his bank that the plaintiff] bought out half [of the defendant's] equity [in Front Street Commons]." Despite the absence of an executed operating agreement or option agreement as anticipated by the parties, Sharon Chan, on behalf of the plaintiff, signed a letter in which she affirmed that the defendant had received $250,000 for the purchase of a 50 percent interest in Front Street Commons. In the letter, the plaintiff indicated that it "[would] be responsible for one half

of the bills and operating expenses," and would receive 50 percent of the profit and income of Front Street Commons.

The defendant did not repay any sums on the notes. On December 15, 2009, the plaintiff demanded repayment of principal, interest, and attorney's fees pursuant to the terms of each of the notes. Thereafter, by way of summons and complaint filed on March 3, 2010, the plaintiff brought suit against the defendant on the basis of his default under each of the notes.

The defendant filed a revised answer, in which he alleged multiple special defenses and a counterclaim against the plaintiff. The defendant asserted as special defenses fraud in the inducement, unjust enrichment, innocent or negligent misrepresentation, and promissory estoppel. The defendant also filed a three count counterclaim alleging fraud, negligent misrepresentation, and a violation of CUTPA.

On April 26, 2010, the plaintiff filed a motion for default for failure to appear pursuant to Practice Book § 17-23. On May 6, 2010, the court, *Riley, J.*, granted the motion and rendered judgment in favor of the plaintiff. On June 22, 2010, the defendant filed a motion to open the judgment pursuant to General Statutes § 52-212 and Practice Book § 17-4 (a).[5] The defendant requested that the court open the default judgment because he had not received notice of the proceedings due to a change of residence. In his motion, the defendant further indicated that he had a valid defense to the complaint and was in the process of hiring an attorney to represent him. On September 21, 2010, the court, *Vacchelli, J.*, granted the motion to open. The court concluded that the "defendant has demonstrated reasonable cause and [the] existence of a good defense justifying the opening of the judgment in this case."

On July 25, 2012, the plaintiff filed a pretrial motion in limine to preclude "any evidence of an alleged condition or purpose to [the] defendant's payment obligation under the six promissory notes . . . ." The plaintiff argued this motion at the commencement of trial, contending that the parol evidence rule barred the court from considering any evidence that would vary the terms of the notes. Specifically, the plaintiff argued that the defendant sought to vary the terms of the notes by offering evidence that the plaintiff told the defendant that the promissory notes were solely to protect the plaintiff if the defendant backed out of the real estate deal.

A trial to the court, *A. Santos, J.*, was held over four days on July 26, July 27, September 6, and October 11, 2012. As of the first day of trial, the total amount due under the notes was $454,366.45, consisting of $281,272.74 in principal and $173,093.71 in prejudgment interest. The plaintiff also requested that the court

award it attorney's fees and related litigation expenses in the amount of $56,411.47.

On June 4, 2013, the court issued a memorandum of decision in which it (1) denied the plaintiff's motion in limine, (2) rendered judgment in favor of the defendant on the plaintiff's complaint, and on the second and third counts of his counterclaim alleging negligent misrepresentation and a CUTPA violation, and (3) rendered judgment in favor of the plaintiff on the first count of the defendant's counterclaim alleging fraudulent inducement. The court awarded the defendant $28,000 in reasonable attorney's fees under CUTPA. See General Statutes § 42-110g (d).[6] Thereafter, on July 31, 2013, the court sustained in part the plaintiff's objection to the award of attorney's fees and entered an order awarding the defendant the lesser sum of $25,575. This appeal followed.

I

The plaintiff first claims that the court abused its discretion in granting the defendant's motion to open the default judgment previously rendered against him because of his negligence. Specifically, the plaintiff argues that the defendant failed to establish, as required by § 52-212,[7] that he had a good defense at the time judgment was rendered and that he was prevented from raising that defense "because of mistake, accident or other reasonable cause." (Internal quotation marks omitted.) We do not agree.

We begin by setting forth the standard of review governing motions to open default judgments. "It is well established that the action of the trial court, in either granting or denying a motion to open a default judgment, lies within its sound discretion. A trial court's conclusions are not erroneous unless they violate law, logic, or reason or are inconsistent with the subordinate facts in the finding. . . . Once the trial court has refused to open a judgment, the action of the court will not be disturbed on appeal unless it has acted unreasonably and in clear abuse of its discretion. . . .

"Because opening a judgment is a matter of discretion . . . [t]he exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal. . . . We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citations omitted; internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 137–38, 989 A.2d 588 (2010).

As our Supreme Court has explained, "[i]t is incumbent upon the [appellant] to take the necessary steps

to sustain [its] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claim] would be entirely speculative." (Internal quotation marks omitted.) Id., 138.

On appeal, the plaintiff argues that the defendant did not have a good defense to its complaint at the time judgment was rendered, and that the defendant's failure to appear was due solely to his inattention rather than to a "mistake, accident or other reasonable cause . . . ." General Statutes § 52-212 (a). The defendant counters that the letter sent by the plaintiff provided him with a strong defense because it "completely contradicted the plaintiff's position that the defendant owed any money as the result of the execution of the promissory notes." The defendant further argues that he demonstrated reasonable cause for opening the judgment because: (1) the plaintiff addressed the summons and first motion for default to a residence that it knew the defendant had not resided at since September, 2009; (2) he believed that his counsel in a different proceeding had filed a pro se appearance on his behalf in the present case; (3) he filed an appearance immediately upon learning that his bank account had been levied against to execute the default judgment; and (4) he had compelling familial and professional obligations during this time.

In the present case, the court found that the "defendant has demonstrated reasonable cause and [the] existence of a good defense justifying the opening of the judgment in this case." The record does not contain any specific or detailed reasons underlying the trial court's ruling. Making every presumption in favor of the court's action, as we must; *Priest* v. *Edmonds*, supra, 295 Conn. 138; the plaintiff has not persuaded us that the court abused its discretion in granting the motion to open the default judgment.

II

The plaintiff next claims that the court improperly denied it recovery on the notes by admitting parol evidence to vary or contradict the integrated and unambiguous terms of the notes. Specifically, the plaintiff argues that the court improperly concluded that the defendant had proven by "clear and unequivocal evidence" that the funds advanced by the plaintiff were in payment for an interest in Front Street Commons and were not loans to be repaid. We agree and, accordingly, reverse the judgment of the court and remand the case for a new trial.

Each promissory note was admitted as a full exhibit

at the trial, and each provided that, for value received, the defendant was to pay the plaintiff, or order, the principal amount by the maturity date. In addition, interest was to be paid annually at the rate of 16 percent. The notes also provided that, in the event of default, the applicable interest rate would be governed by New York law. Specifically, if the defendant did not pay the sums due in full on or before the maturity date specified in each note, interest "at the higher of [a] the rate of [16] percent per annum, or [b] the highest rate permitted by New York State law, shall be due on the unpaid principal balance, calculated from the date hereof through the date of payment." The notes further provided that the defendant would pay all reasonable costs of collection, including reasonable attorney's fees and expenses, incurred in any action brought by the plaintiff to collect on the sums due on the notes. Another provision in each note prohibited any oral modification of the terms of the note, and required that any amendment be in writing and "signed by the party against whom enforcement of any such change, modification, discharge or waiver [was] sought."[8]

As a preliminary matter, the court addressed the plaintiff's motion in limine. The court concluded that the introduction of extrinsic evidence was not precluded by the parol evidence rule in the present case because "the contract was not fully integrated, and the parties' full true agreement was not reduced to a signed writing."

The court rendered judgment in favor of the defendant on the plaintiff's complaint. The court concluded that the defendant had proven, by clear and unequivocal evidence, that the funds provided to the defendant were not loans to be repaid. The court further concluded that the plaintiff had failed to prove that the defendant was unwilling to perform on the promise to sell his 50 percent interest in Front Street Commons.

The court sustained the defendant's innocent or negligent misrepresentation special defense and the second count of his counterclaim. Considering the lower standard for proving negligent or innocent misrepresentation as opposed to fraudulent misrepresentation, the court concluded that the defendant had established that the plaintiff had negligently and innocently misrepresented the purpose of each note. The court determined that the defendant had relied on the plaintiff's misrepresentations and incurred damages by not pursuing tenants for available space and declining to enter into long-term leases.

In sustaining the defendant's special defense of promissory estoppel, the court concluded that the plaintiff was estopped from claiming that the notes were not advancements toward the purchase of a 50 percent interest in Front Street Commons. The court determined that the defendant had acted in reliance on the

plaintiff's representations by evicting tenants and using the money provided to him for the expenses and losses of Front Street Commons and for his personal needs.

The court denied the defendant's special defense and the first count of his counterclaim alleging fraud in the inducement. The defendant could not prevail, the court reasoned, because he did not produce evidence showing that the statements made by the plaintiff were untrue and were known to be untrue by the plaintiff. See *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

The court was similarly not persuaded by the defendant's special defense of unjust enrichment. Specifically, the court determined that (1) the defendant "received [money] advances from the plaintiff toward the purchase of a 50 percent [interest] in Front Street Commons," (2) the defendant had not made any payments on the notes, and (3) the plaintiff had not retained any other benefit outside of the parties' agreement.

Finally, the court agreed with the defendant that the plaintiff engaged in an unfair or deceptive act or practice in misrepresenting the purpose of the promissory notes and, accordingly, rendered judgment in favor of the defendant on the third count of his counterclaim alleging a CUTPA violation. The court, in a modified ruling, ordered the plaintiff to pay the defendant $25,575 in reasonable attorney's fees under CUTPA.

We turn next to our standard of review. "Ordinarily, [o]n appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [plaintiff's] claim involves a question of law to which we afford plenary review." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004).

"A promissory note is a written contract for the payment of money, and, as such, contract law applies." *Antonino* v. *Johnson*, 113 Conn. App. 72, 75, 966 A.2d 261 (2009). "The standard of review for the issue of contract interpretation is well established. When, as here, there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . The reviewing court must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273–74, 982 A.2d 1125 (2009).

Having set forth the applicable standard of review, we now consider whether our analysis is guided by the

substantive contract law of New York or Connecticut.[9] The plaintiff argues that the validity and enforcement of a promissory note generally depends on the law of the state where it is payable.[10] The plaintiff urges this court to apply the substantive contract law of New York because the notes required payment in that state. With respect to the application of the parol evidence rule, the plaintiff recognizes correctly that there are no material differences between New York and Connecticut law as applied to the facts of the present case. The defendant did not reply to these arguments in his appellate brief or during oral argument before this court.

We conclude that the substantive contract law of New York governs our interpretation and construction of the notes. The notes at issue in this case do not contain choice of law clauses. In the absence of an effective choice of law by the parties to govern our interpretation of the notes, it is appropriate for us to apply the local law of the state where the contracts require that repayment be made. See 1 Restatement (Second), Conflict of Laws § 195 (1971).[11] Our examination of the notes reveals that each agreement required that the defendant repay the funds by mailing payment to the plaintiff in New York. Each note stated explicitly that payment "shall be mailed [by the defendant] to 131 West 35th Street, New York, New York 10001, or at such other place as designated by [the plaintiff] . . . ." We, accordingly, will apply the substantive contract law of New York in the present case.

As noted previously, the Connecticut and New York approaches to parol evidence are substantially similar. The New York parol evidence rule has been explained in the following terms: "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing. That rule imparts stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses[,] infirmity of memory and the fear that the jury will improperly evaluate the extrinsic evidence. . . .

"Thus, the parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous. . . . If the terms are ambiguous or contradictory, however, the rule permits the consideration of such evidence not to alter the terms but solely to ascertain the true meaning of the terms. . . . Moreover, the parol evidence rule is a rule of substantive law rather than one of procedure or evidence. . . .

"Application of the parol evidence rule requires a

three-step inquiry: first, whether the written contract is an integrated agreement; if it is, then, second, whether the language of the written contract is clear or is ambiguous; and, if the language is clear, then third, applying that clear language, whether [the plaintiff] has alleged a breach of the contract." (Citations omitted; internal quotation marks omitted.) *Wayland Investment Fund, LLC* v. *Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 453–54 (S.D.N.Y. 2000).

The first step in applying the parol evidence rule is to assess whether the written contract is integrated. "[An] integrated contract is one which represents the entire understanding of the parties to the transaction. . . . [U]nder New York law a contract which appears complete on its face is an integrated agreement as a matter of law. . . . Therefore, if the written document appears to contain the engagements of the parties, and to define the object and measure the extent of such [engagements, then] it constitutes the contract between them, and is presumed to contain the whole of that contract. . . . Where . . . a party points to another agreement beyond the four corners of the contract, and the contract itself lacks a merger clause, the court must determine whether or not there is an integration by reading the writing in the light of surrounding circumstances, and by determining whether or not the [other] agreement was one which the parties would ordinarily be expected to embody in the writing." (Citations omitted; internal quotation marks omitted.) Id., 454.

The second step in applying the parol evidence rule requires us to "determine whether the language of the written instrument is clear or whether it is ambiguous. . . . Whether or not a writing is ambiguous is a question of law to be resolved by the courts. . . . An ambiguity arises if the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. . . . It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity where none exists." (Citations omitted; internal quotation marks omitted.) Id., 455. The third and final step is to determine "whether, applying the clear contractual terms, [the plaintiff] has alleged a breach of the written contract." Id., 456.

Having set forth our standard of review and the applicable law, we now consider the specific arguments raised by the parties on appeal. The plaintiff contends that the court's finding that "the contract was not fully integrated, and the parties' full true agreement was not reduced to a signed writing" was improper. The plaintiff argues that the court should have declined to admit parol evidence to vary the clear and unambiguous

repayment terms of the notes. The plaintiff further argues that each note was an integrated agreement that was separate and distinct from the parties' unsuccessful negotiations relating to Front Street Commons in the broader transactional context found by the court to be determinative. The defendant counters that the court found correctly that the notes were not fully integrated, and that the introduction of extrinsic evidence of an alleged oral condition to his payment obligation under the notes was not precluded by the parol evidence rule. We agree with the plaintiff.

We find further guidance with respect to the application of the first step of the parol evidence rule in *Miller* v. *Steloff*, 686 F. Supp. 91, 93–94 (S.D.N.Y. 1988). The court in *Miller* found, applying New York law, that despite the defendants' claim that a January, 1984 note and a March, 1985 note were actually part of a continuing transaction, the March note was "an agreement unto itself." Id., 94. In concluding that the March note was an integrated agreement, the terms of which could not be contradicted by reference to prior or contemporaneous agreements, the court reasoned: "The amount borrowed, the rate of interest, the terms of repayment, and the events of default are set forth in full detail. When the parties wished to refer to a collateral document to incorporate its terms, they did so explicitly. [W]here a note appears on its face to be a completely integrated, unconditional promise to pay, and where the evidence of [the extraneous] agreement sought to be introduced is at variance with the terms of the obligation, the parol evidence rule applies." (Internal quotation marks omitted.) Id. The court in *Miller* thus concluded that the March note was an integrated agreement, and that its terms could not be contradicted by reference to prior or contemporaneous agreements. Id.

Turning to the present case, we conclude that the court improperly determined that the notes were not fully integrated and considered extrinsic evidence to vary or contradict the explicit terms of the notes. The evidence before the court demonstrated that the defendant was aware that an agreement had not been finalized for the sale of his 50 percent interest in Front Street Commons and that an agreement might not be reached in the future. The evidence further demonstrated that the defendant, nevertheless, almost immediately sought a series of personal loans from the plaintiff, for each of which he executed a written note. The defendant, who was represented by counsel, executed six notes over the course of thirteen months that were payable to the plaintiff. The defendant received a total sum of $281,272.74 that he used for various purposes, including his personal needs.

Here, the parties failed in their subsequent efforts to achieve a comprehensive written agreement separate from the notes. The defendant did not prove a modifica-

tion of the terms of any of the notes that was agreed to by the plaintiff after the notes were executed, in accordance with the provisions in the notes governing modification. It is undisputed that the parties intended for their agreements concerning Front Street Commons to be in writing and, as noted by the court, they attempted assiduously to prepare those agreements without success from September, 2007, through 2009, when discussions and negotiations ceased. The overarching business agreement that the parties sought to reach was never achieved, and the notes were never modified in writing as required by their terms and conditions as a prerequisite to any modification.

Each of the six notes represented and reflected a specific transaction between the parties. Standing alone, each note constituted an integrated agreement, supported by new and different consideration, and was enforceable separately according to its unambiguous terms. Each note provided that it could not be "changed, modified or discharged, nor [could] any provision [be] waived, orally, but only in writing, signed by the party against whom enforcement of any such change, modification, discharge or waiver [was] sought." The defendant cannot point to any such document signed subsequently by the plaintiff.

As noted previously, the court concluded that "the contract was not fully integrated and the parties' full true agreement was not reduced to a signed writing" and, therefore, "the introduction of extrinsic evidence [was] not precluded by the parol evidence rule in the present case." In referencing "the contract" in its memorandum of decision, the court was not referring to each note but instead, to an arduously negotiated—but never completely agreed to and consummated—written contract concerning the sale of the defendant's 50 percent interest in Front Street Commons, or to some other transaction concerning the properties that also was never completely agreed to and committed to writing by the parties. The court did not analyze whether each of the notes was an integrated obligation and whether each could be enforced separately according to its terms, which were voluntarily entered into by the commercially sophisticated defendant, subject to any proper defenses that he could prove.[12] The court therefore erred as a matter of law in concluding that each note was not fully integrated.

We now turn to the exceptions to the application of the parol evidence rule under New York law.[13] In *Adler & Shaykin* v. *Wachner*, 721 F. Supp. 472, 478 (S.D.N.Y. 1988), the United States District Court, applying New York law, set forth three circumstances in which parol evidence may be admitted even if an agreement is integrated. "First, parol evidence may come in if the alleged agreement is collateral, that is, one which is separate, independent and complete . . .

although relating to the same object. . . . Only where three conditions are met will the Court allow evidence in support of an allegedly collateral agreement. . . .

"[B]efore such an . . . agreement as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing. . . . [The . . . agreement] must not be so clearly connected with the principal transaction as to be part and parcel of it." (Citations omitted; internal quotation marks omitted.) Id.

Second, parol evidence may be admitted if the underlying contract is ambiguous. "Where the language employed in a contract is ambiguous or equivocal, the parties may submit parol evidence concerning the facts and surrounding the making of the agreement in order to demonstrate the intent of the parties . . . ." (Citation omitted; internal quotation marks omitted.) Id., 479; see also *Ralli* v. *Tavern on the Green*, 566 F. Supp. 329, 331 (S.D.N.Y. 1983). "[Where] contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting." *Schering Corp.* v. *Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

Finally, the parol evidence rule has no application "in a suit brought to *rescind* a contract on the ground of fraud." (Emphasis in original; internal quotation marks omitted.) *Adler & Shaykin* v. *Wachner*, supra, 721 F. Supp. 479. "Under New York law, to plead a prima facie case of fraud the plaintiff must allege representation of a material existing fact, falsity, scienter, deception and injury. . . . In short, a contractual promise made with the undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause, the plaintiff is free to prove that he was induced by false and fraudulent misrepresentations . . . ." (Citations omitted; internal quotation marks omitted.) Id., 479–80.

After our review of the court's memorandum of decision and the record, we have determined that the court could not reasonably find or conclude that the defendant proved the existence of any completed written collateral agreements that modified the terms of any of the notes. In addition, the evidence before the court does not show that either party sought to rescind any of the contracts on the ground of fraud.[14] When considered facially, the terms of the notes are clear and unambiguous.

In summary, because of the court's erroneous conclusion that each of the notes was not integrated, it improperly allowed the defendant to offer evidence that violated the parol evidence rule without first applying

the law pertaining to the recognized exceptions thereto under New York law.[15] The court improperly based its findings and conclusions on the parties' ultimately unsuccessful negotiations regarding a comprehensive written contract separate from the notes. Accordingly, the court did not separately analyze and apply to each note the New York parol evidence rule, and each of the recognized exceptions thereto. On remand, the plaintiff is, therefore, entitled to the opportunity to prove its damages with respect to each of the notes, the existence and written terms of which the defendant does not dispute. The defendant is entitled on remand to allege and prove any of the defenses it may have to each of the notes in accordance with the recognized exceptions under New York law to the parol evidence rule.

As set forth previously, the application of the parol evidence rule requires a three step inquiry. In this case, each note is a separate integrated agreement supported by consideration, the language of which is clear and unambiguous, and in its complaint the plaintiff has alleged a breach of each note. The only exceptions to the parol evidence rule that the defendant has pleaded as a special defense or counterclaim are mistake, fraud, and a violation of CUTPA. On remand, the trier of fact should analyze separately each of the defendant's valid defenses under New York law with respect to each of the notes, and the counterclaim alleged by the defendant, at least one of which, the CUTPA count, is subject to Connecticut law, in accordance with this opinion.

This court has held previously that where a substantive error permeates the court's findings and undermines its judgment, reversal of the entire judgment and further proceedings may be required. See, e.g., *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 117 Conn. App. 86, 92, 978 A.2d 118 (2009) (remanding for new trial and declining to reach further claims on appeal where court's findings and judgment were based on substantive error); see also *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 137 Conn. App. 842, 853–54, 49 A.3d 1072 (2012) (same). Here, the court sustained the defendant's special defenses of misrepresentation and promissory estoppel, and rendered judgment in his favor on the second and third counts of his counterclaim alleging negligent misrepresentation and a violation of CUTPA. The court denied the defendant's claim for damages for lost rents under CUTPA, but granted the defendant an award of reasonable attorney's fees. We conclude that the court's legal determination that the parol evidence rule did not preclude the introduction of extrinsic evidence to avoid the enforcement of each of the notes is an error that permeates the court's findings and undermines its entire judgment. A new trial before a different judge is necessary so that the court may review all of the claims raised by the parties in this case viewing the notes as separate integrated agreements subject to interpretation and con-

struction under New York law. See General Statutes § 51-183c.[16] To the extent that the tort counts of the counterclaim are pursued by the defendant, it is likely that those claims, on the basis of the alleged place of injury, will be subject to Connecticut law.

The judgment is reversed and the case is remanded for a new trial in accordance with this opinion.

In this opinion the other judges concurred.

[1] The plaintiff also claims that the court improperly (1) rendered judgment in favor of the defendant because he lacked standing to assert his counterclaim, (2) rendered judgment in favor of the defendant on his CUTPA counterclaim because it was based solely on intrabusiness conflicts rather than "competitive acts or practices," and (3) awarded attorney's fees to the defendant on his CUTPA counterclaim. The defendant counters that (1) he had standing to bring his counterclaim and special defenses because he proved substantial injuries, (2) the court properly rendered judgment in his favor on his CUTPA counterclaim because the plaintiff engaged in a deceptive practice by claiming that the purchase price for the defendant's interest in Front Street Commons was a loan, and (3) the court's award of attorney's fees to litigate the CUTPA action and, specifically, to prove that the plaintiff lied as to the true purpose of the notes, was reasonable. Because we conclude that the plaintiff's claim regarding the parol evidence rule is dispositive, we do not address these arguments in this opinion.

[2] Ulrika Gates, Douglas Chan, Sharon Chan, and Front Street Commons are not defendants in this case.

[3] Subsequently, upon completion of environmental surveys on the properties, the purchase price to be paid by the plaintiff for the defendant's 50 percent interest in Front Street Commons was reduced from $373,640 to $250,000.

[4] We note that the trial court, in its memorandum of decision, indicated that the second note was dated February 6, 2008. Our review of the record reveals that the note was dated February 8, 2008.

[5] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

[6] General Statutes § 42-110g (d) provides in relevant part that a party prevailing under a CUTPA claim may be awarded "costs and reasonable attorneys' fees . . . ."

[7] General Statutes § 52-212 provides: "(a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.

"(b) The complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear.

"(c) The court shall order reasonable notice of the pendency of the complaint or written motion to be given to the adverse party, and may enjoin him against enforcing the judgment or decree until the decision upon the complaint or written motion."

[8] The notes dated January 8, 2008, and February 8, 2008, included additional language providing that the note was negotiable. The notes dated March 12, 2008, January 7, 2009, February 13, 2009, and February 17, 2009, included the following additional language for identification: "Reference: Brian Gates Loan."

[9] This court has set forth previously the general rules of contract formation in Connecticut. "A contract is an agreement between parties . . . . Con-

tracts may be express or implied. . . . If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one." (Internal quotation marks omitted.) *Boland* v. *Catalano*, 202 Conn. 333, 336, 521 A.2d 142 (1987). "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists. . . . [A]n agreement must be definite and certain as to its terms and requirements. . . . So long as any essential matters are left open for further consideration, the contract is not complete." (Internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 688, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

[10] The plaintiff relies on *Santoro* v. *Osman*, 149 Conn. 9, 174 A.2d 800 (1961), in support of its argument. The note in *Santoro* both had been made and was payable in New York. Id., 11. The issue in *Santoro* was whether the usury law of New York or Connecticut was to be applied on behalf of the defendant, a Connecticut resident. Id., 12. Our Supreme Court determined that the rule as to choice of law in cases where usury is claimed depends upon the law of the place where the note is payable. Id.; see also *Heating Acceptance Corp.* v. *Patterson*, 152 Conn. 467, 474 n.3, 208 A.2d 341 (1965); *Pioneer Credit Corp.* v. *Radding*, 149 Conn. 157, 159, 176 A.2d 560 (1961). As in *Santoro*, the notes in this case were payable in New York.

[11] Section 195 of 1 Restatement (Second) of Conflict of Laws provides: "The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

[12] Our Supreme Court has explained the proper analysis of negotiable notes, as exist in this case. "[General Statutes §] 42a-3-104 provides that any writing may be a negotiable instrument if it (1) is payable to order or to bearer, (2) is payable on demand or at a definite time and (3) contains an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges, and no other promise, order, obligation or power is given by the maker or drawer except as otherwise authorized." *Florian* v. *Lenge*, 91 Conn. App. 268, 277, 880 A.2d 985 (2005). "To prevail in an action to enforce a negotiable instrument, the plaintiff must be a holder of the instrument or a nonholder with the rights of a holder. . . . Only a holder in due course may enforce a negotiable instrument. . . . Pursuant to General Statutes § 42a-3-301, a [p]erson entitled to enforce an instrument [such as a promissory note] means . . . the *holder* of the instrument . . . . Moreover, General Statutes § 42a-1-201 (20) defines the term *holder*, with respect to a negotiable instrument, as meaning the person in *possession* if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." (Emphasis in original; internal quotation marks omitted.) Id., 278. Upon this showing by the plaintiff, it was incumbent upon the defendant to allege and prove a valid defense. See *Connecticut Bank & Trust Co.* v. *Dadi*, 182 Conn. 530, 531, 438 A.2d 733 (1980). The New York law is substantively similar. See, e.g., *First International Bank of Israel, Ltd.* v. *L. Blankstein & Son, Inc.*, 59 N.Y.2d 436, 444, 452 N.E.2d 1216, 465 N.Y.S.2d 88 (1983) (noting that, under UCC § 3-307 (2), when holder of promissory note produces properly signed instrument, it is entitled to recover on note unless defendant establishes genuine defense).

[13] As stated previously, our Supreme Court has recognized exceptions to the parol evidence rule that are substantially similar to those under New York law. See *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, supra, 269 Conn. 609–10.

[14] Although the defendant alleged fraud in the inducement as a special defense and in the first count of his counterclaim, he does not seek to rescind any of the contracts. "The effect of rescission is to declare [a] contract void from its inception and to put or restore the parties to status quo . . . . As a general rule, rescission of a contract is permitted where there is a breach of contract that is material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of

the parties in making the contract . . . .” (Citations omitted; internal quotation marks omitted.) *Lenel Systems International, Inc.* v. *Smith*, 106 App. Div. 3d 1536, 1537–38, 966 N.Y.S.2d 618 (2013). Here, the defendant has not tendered to the plaintiff any of the funds provided to him as a result of the execution of the notes.

[15] In its memorandum of decision, the court did not state that it applied New York law in its legal analysis of each of the notes.

[16] General Statutes § 51-183c provides in relevant part: “No judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case. . . .”