Deutsche Bank Tr. Co. Ams. v. Rado Ltd. P'ship

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY  ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 3rd day of September, two thousand twenty.

Present:      ROSEMARY S. POOLER,
             PETER W. HALL,
             DENNY CHIN,
                       *Circuit Judges*.
_____

DEUTSCHE BANK TRUST COMPANY AMERICAS,

              *Plaintiff-Counter-Defendant-Appellee*,

       v.                                                    19-3089-cv

RADO LIMITED PARTNERSHIP,

              *Defendant-Counter-Claimant-Appellant*.

_____

Appearing for Appellant:      Mark J. Leimkuhler, Lewis Baach Kaufmann Middlemiss PLLC (Eric L. Lewis, Chiara Spector-Naranjo, *on the brief*), Washington D.C.

Appearing for Appellee:       David G. Januszewski, Cahill Gordon & Reindel LLP (Sesi V. Garimella, Bonnie E. Trunley), New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Rado Limited Partnership appeals from the April 25, 2019 opinion and order of the United States District Court for the Southern District of New York (Cote, *J.*) granting Deutsche Bank Trust Company Americas' ("DBTCA") motion to dismiss Rado's counterclaims alleging that DBCTA failed to adequately guard its trust account from being mismanaged, and the August 27, 2019 opinion and order of the same court granting DBTCA's motion for summary judgment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Rado held a nondiscretionary custody account (the "Custody Account") with DBTCA and granted Fernando Haberer a limited power of attorney to direct the trading in the account. Rado alleges that Haberer committed fraud while, among other things, trading in the Custody Account and causing an overdraft. DBTCA sued to recover the amount of the overdraft, and Rado counterclaimed on the ground that DBTCA failed to adequately protect the Custody Account. The Custody Account, opened in March 2011, is governed by a Custody Agreement. The agreement provides that DBTCA will "keep and protect, in the same manner as [DBTCA] keeps and protects its own similar property, the securities, cash or other financial assets [Rado] deposit[s] in [its] Account(s)" in exchange for monthly fees pegged to the value of the property held in the account. App'x at 25. The agreement also provides that "[u]pon instructions from [Rado] or [its] Advisor, [DBTCA] will buy or sell, for [Rado's] Account and at [Rado's] sole risk, securities or other financial instruments and any foreign currency needed to complete these transactions." App'x at 25. The Custody Agreement further provides that "[DBTCA] may effect orders to buy or sell securities [and other investments] in any commercially reasonable manner [DBTCA] deems appropriate." App'x at 25.

Rado first argues that the district court erred in dismissing its counterclaim for breach of contract because the "keep and protect" language meant that DBTCA was required to "keep and protect" Rado's assets as its own, and that DBTCA "would not have so cavalierly executed these facially improper transactions, on massive borrowed funds, had it been dealing with its own assets." Appellant's Br. at 23. However, as the district court properly found, the Custody Agreement makes clear that DBTCA did not have a duty to monitor the transactions taking place in the Custody Account by Rado's duly appointed power of attorney.

Rado next relies on *Lerner v. Fleet Bank, N.A.* for the proposition that banks "have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled." 459 F.3d 273, 295 (2d Cir. 2006). We agree with the district court that *Lerner* does not apply here. *Lerner* represents an exception to the general rule that "a depositary bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *Id.* at 287 (internal quotation marks and citation omitted). A "bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust," and the bank loses the right to this presumption only when faced with "circumstances which reasonably support the sole inference that a misappropriation is intended." *Id.* (internal quotation marks and citation omitted). The attorney in *Lerner* solicited funds for his scheme and then deposited them into an Interest on

Lawyers' Trust Account ("IOLA"). *Id.* at 279-80. Banks that administer IOLA accounts are obligated to report overdrafts to the state IOLA fund. *Id*. Rather than report the attorney, the defendant bank agreed not to report any bounced checks and to respond to any inquiries about the overdrawn IOLA accounts by saying they had "double-digit million-dollar balances." *Id*. at 282. But as *Lerner* recognized, less extreme facts generally will not state a claim. *Id*. at 288-90. The allegations here are insufficient to invoke *Lerner*.

Rado also challenges the district court's grant of summary judgment to DBTCA to collect the overdraft amount. Rado argues that certain trust deeds, which were given to DBTCA, did not allow Haberer to borrow funds against the Custody Account. The district court found it could not consider the trust deeds because the Custody Agreement was an integrated document that could not be modified by the trust deeds. Even assuming the Custody Agreement lacked a merger clause, we find that the Custody Agreement is an integrated document. Under New York law, if a contract itself lacks a merger clause, "the court must determine whether the agreement is integrated 'by reading the writing in the light of surrounding circumstances.'" *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995) (quoting *Braden v. Bankers Tr. Co.*, 60 N.Y.2d 155, 162 (1983)). Here, the Custody Agreement clearly defines the relationship between the parties— a custodial banking relationship—and makes no reference to the trust deeds. It specifies who the parties to the agreement are, appears complete as to its terms, and states that "this Agreement . . . constitute[s] [Rado's] legal, valid and binding obligations, enforceable according to their terms." App'x at 28. Even in the absence of a merger clause, the Custody Agreement is an integrated agreement. It provides that Rado must indemnify DBTCA for deficits in the Custody Account. The limited powers of attorney required Rado to indemnify DBTCA for any losses arising from Haberer's actions while acting thereunder. We therefore conclude that the district court did not err in granting DBTCA's motion for summary judgment.

We have considered the remainder of Rado's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk